## BROWN *vs.* AUTREY.

1. In an action for libel, the court having permitted the defendant to show that he had previously had a difficulty with the plaintiff, there was no error in refusing to allow him to show the circumstances of the difficulty. Such testimony was immaterial, and would show neither a justification of the libel nor a circumstance to mitigate the damages.

2. Where a jury of twelve men of the original panel was out, and the court had twelve more summoned as tales jurors and empanelled, and the parties struck a jury from the panel thus made without objection, this furnished no ground for a motion for a new trial.

3. If a party knows of objections to a juror on account of a difficulty with his family, or prejudice against one of his counsel, and fails to strike him from the panel, but accepts him as one of the jury before whom the case is tried, the objection to the juror furnishes no ground for a motion for a new trial after verdict.

4. In an action for libel, a verdict for the plaintiff will not be set aside on the ground that it is excessive, unless it appear from the facts that the jury were influenced by bias or prejudice, or some other improper motive or influence, the law furnishing no crite-

rion of damages in such cases, except the enlightened conscience of impartial jurors.

(a) The case having been fairly tried, and there being no error in the charge of the court, the verdict should have been allowed to stand, and the grant of a new trial was error.

April 6, 1887.

Libel. Evidence. Jury and Jurors. Practice in Superior Court. Damages. Verdict. New Trial. Before Judge BROWN. Milton Superior Court. August Term, 1886.

Reported in the decision.

PHILLIPS & SESSIONS; J. P. BROOKE, for plaintiff in error.

GEO. N. LESTER; H. P. BELL, for defendant.

BLANDFORD, Justice.

Brown sued Autrey for libel. The libel consisted of a letter, addressed to one Bill Sexton, which was as follows:

"Bill, this is to notify you that I want you to get out of my house and off of my place in 10 days from this date, as you have got that damed hog-stealing Jim Brown in with you, he wrote you a note and sent by Prat yesterday that he could not come home last nite, so you can look you and him a home, for he cannot roost on my land, nor you either if you let him stay round you. You can come up and settle, and bring some one with you to make the settlement as I want you to make the settlement for yourself and him too, for he cannot come on my place. (Signed)          R. M. AUTREY."

This letter was handed to a man named Langley by Autrey, and he read it to Langley and instructed him to give it to another man, one Brumbillo, to be by him handed to Sexton. This was done, and Sexton read it. Sexton had married the daughter of Autrey, and Brown had married the granddaughter of Autrey, who was the daughter of Sexton's wife by a former husband. The letter was fully identified by these witnesses, and the publication of the libel clearly shown.

We see no evidence in the case to justify this libel. The only attempt at justification was the testimony of Autrey, that Brown had told him that he had been indicted in Alabama for stealing a hog. This was denied by Brown, who testified that all he told Antrey was, that he had been indicted for injuring a hog. Another circumstance relied on in mitigation of damages was, that he and Brown had had a difficulty of some sort, and Brown had cursed him to other people, etc. The jury had the case before them under proper instructions, and they found a verdict in favor of Brown, assessing the damages at $1,000. A motion for new trial was made on several grounds, and the court granted the motion. This grant of a new trial was excepted to, and error is assigned on the same to this court.

1. One of the grounds of the motion for new trial was, that the court refused to allow the defendant to go on and prove the circumstances of the difficulty which he and Brown had had previously. The court allowed him to prove that they had had a difficulty, but declined to allow him to show the circumstances of the difficulty. We think the court was right in rejecting such testimony. It was wholly immaterial; it was no justification of the libel, nor was it a circumstance to mitigate the damages. On the contrary, the proof of a previous difficulty between the parties would seem to show malice on the part of Autrey in writing the letter.

2. Another ground of error was, that the court, while a jury of twelve men of the original panel was out, had twelve more summoned as tales jurors and impanelled, and that they struck the jury from the panel thus made. There was no objection at the time to this action of the court. The parties went on and struck the jury without objection; and the first time objection was made was in the motion for new trial. We think that this action of the court does not authorize a new trial in this case; under the circumstances, the parties would be considered to have waived any irregularity of this kind in the form

ation of the jury. They knew of the fact, and had a right to object, and could have been heard at the time. They failed to do this, but went on and selected the jury; and we think the objection came too late.

3. Another objection was, that there was a man named Rainwater, who by mistake they forgot to strike off. He was a man they knew, and before they struck the jury, they knew that they did not want him; but they failed to strike him and he was left on the jury. They said Autrey's son had whipped Rainwater, and therefore he was not an unprejudiced juror to try Autrey's case; also that Rainwater did not like one of Autrey's counsel. We do not think that constituted any ground for a new trial. They took this man on the jury, knowing that he was objectionable, and took the chance of getting a verdict from him; and if they made a mistake, they must bear the consequences of the mistake.

4. Another ground of the motion for new trial was, that the damages awarded by the jury were excessive. Whether the damages were excessive or not depends on the facts shown by the record; the judge must determine this from what was shown on the trial of the case. The amount of damages, it seems to us, is rather moderate than excessive; but we think our code settles this matter. §3067: "In some torts the entire injury is to the peace, happiness or feelings of the plaintiff; in such cases, no measure of damages can be prescribed, except the enlightened conscience of impartial jurors. The worldly circumstances of the parties, the amount of bad faith in the transaction and all the attendant facts should be weighed. The verdict of a jury, in such a case, should not be disturbed, unless the court should suspect bias or prejudice from its excess or its inadequacy." We do not suspect any bias or prejudice from the excess of this verdict, and we cannot see from the record why the court below should suspect any bias or prejudice.

In *Bishop & Parsons vs. The Mayor and City Council*

*of Macon*, 7 *Ga.* 204, Judge Lumpkin held that in cases of batteries, libels, *crim. con.*, malicious prosecution, and the like, the verdict of the jury would not be disturbed by the court, because the law gave no criterion of damages in such cases. The standard is the enlightened conscience of the jury. And unless it appear from the facts that the jury was influenced by bias or prejudice, or some other improper motive or influence, the court should not interfere. So we conclude, after looking at this record, that the case was fairly tried, and that no mistake of law was made by the court in his instructions to the jury ; and the verdict ought to have been allowed to stand. We therefore reverse the judgment of the court below.