## Hardy v. Williamson.

86  551
110  647
111  419

The libel alleged in the declaration was the publication in a newspaper of the following: "Either by erroneous classification, or classification obtained by the brick company and their subcontractors, by collusion with the subordinate engineers of the construction company, or some of them, the work of the Chattahoochee Brick Company has been overestimated to the extent of at least one hundred thousand dollars, and probably one hundred and fifty thousand dollars." The declaration alleges that these words were falsely and maliciously written and published by the defendant of and concerning the plaintiff, who, it was alleged, was one of the subordinate engineers of the construction company employed for and in charge of the classification and estimating of the work of the Chattahoochee Brick Company; and that these words were intended by the defendant to charge and accuse the plaintiff with falsely and fraudulently colluding with the brick company and its subcontractors to cheat, defraud and swindle his employer, the construction company; and the declaration avers extraneous facts to show that they had reference to him, and were so understood and received by those who read them and the public at large. *Held,* that the court erred in sustaining a demurrer to the declaration on the ground that the facts as stated therein did not make a cause of action sufficient in law to authorize a recovery against the defendant.

(a) Even where the words used may at first sight appear only to apply to the subordinate engineers as a class, and not to be specially de-

famatory of any particular one of them, still if the plaintiff can satisfy the jury that they referred especially to him, he would be authorized to maintain the action.

(b) It was unnecessary that a specific crime should be charged to enable the plaintiff to maintain his action. Charges made on one in reference to his trade, office or profession calculated to injure him therein are actionable, and no special damage is essential to support the action. Besides, the words, if written of and concerning the plaintiff, accused him of an offence amounting at least to moral turpitude.

(c) Nor does it make any difference that the words were put in the disjunctive, to wit, "the subordinate engineers of the construction company, or some of them." It may turn out on the trial that the expression "or some of them" was used because the writer did not mean that all were guilty, but that the plaintiff alone or with others was guilty.

January 19, 1891. By two Justices.

Libel. Before Judge MADDOX. Floyd superior court. March term, 1890.

Reported in the decision.

HENRY WALKER, by brief, for plaintiff.

DABNEY & FOUCHÉ, for defendant.

SIMMONS, Justice.

We think the court below erred in sustaining a demurrer to the declaration on the ground " that the declaration did not present such a statement of facts or causes of action as entitled the petitioner to maintain the suit, and that the facts as stated in the declaration did not make a cause of action sufficient in law to authorize any recovery against the defendant." The plaintiff asserts in his declaration, in substance, that the defendant was president of a construction company which had contracted to build a certain railroad; and that the plaintiff and ten others were employed as subordinate engineers by the defendant to survey, lay out and superintend the work on the railroad and the several residencies thereof, and to estimate and classify the work as it was done from time to time, in order that the construction company might settle with and pay

off its subcontractors; that the construction company subsequently sublet the building of the railroad to the Chattahoochee Brick Company, and that the latter company constructed the road; that the plaintiff and the other subordinate engineers, as officers and employees, were placed in charge of the work, and it was their duty to survey, lay out and superintend the building of the railroad for the construction company, and they were employed and paid by the construction company for this service; that the plaintiff was placed in charge of the "6th residency" on the railroad, which extended a distance of eleven miles, and embraced sections 52 to 62 inclusive; that he made monthly estimates of the quantity of earth and material moved and work done by the brick company as a basis for monthly settlements by the construction company with the brick company; that he and the other engineers mentioned performed their duties skilfully and honestly, and complied fully with their contract in relation thereto; and that thereafter the construction company pretended to dispute the classification and estimate made of the work by the plaintiff and the other officers and engineers, and denied its indebtedness to the brick company for the unpaid balance due that company, and the brick company thereafter began suit against the construction company to recover the same, but that pending an accounting between the parties before an auditor, the construction company admitted its liability, settled it in full and paid the brick company the balance due it by the construction company; that when the controversy first began, the defendant falsely and maliciously published the following false and defamatory libel of and concerning the plaintiff and the manner in which he had performed his work, and of his honesty and integrity as a man, and his fitness and capacity as a civil engineer, to wit:

" Either by erroneous classification, or classification obtained by the brick company and their subcontractors, by collusion with the subordinate engineers of the construction company, or some of them, the work of the Chattahoochee Brick Company has been overestimated to the extent of at least one hundred thousand dollars, and probably one hundred and fifty thousand dollars."

The declaration alleges that the defendant caused all the sections of the railroad embraced in residency number 6, of which the plaintiff had charge and had surveyed and examined and the work on which he had estimated for the construction company, to be re-examined and re-surveyed and the work done thereon re-estimated; and that the words above set out and published and herein complained of were written and published by the defendant whilst the work of re-examining, re-surveying, re-estimating and re-classifying this residency and the several sections thereof was going on and before the same was completed, and were understood by the public at large to apply to the plaintiff, and were so received and considered by them, and were so used, intended and designed by the defendant. By all of which it was designed and intended by the defendant to charge and accuse the plaintiff with falsely and fraudulently colluding with the brick company and said subcontractors to cheat, defraud and swindle the construction company; and it was the deliberate intent and purpose of this publication to convey this impression and belief to the public (and it was so received and understood by those who read the publication), that the plaintiff had colluded and combined with the brick company and its subcontractors, and the subordinate engineers of the construction company, to cheat, swindle and defraud the construction company, and thereby injure the plaintiff's reputation and bring his name and character into disrepute, making his reputa-

tion odious and exposing him to the hatred, contempt and ridicule of the public at large.

Taking all these allegations together, we think they are sufficient to authorize the plaintiff to submit the question to a jury. It is claimed, however, by the able counsel for the defendant in error, that if the publication was libellous, it had reference to a particular class of people, and therefore gave no right of action to an individual of that class. Odgers in his work on Libel and Slander, *p. 127, says: "The defamatory words must refer to some ascertained or ascertainable person, and that person must be the plaintiff. If the words used really contain no reflection on any particular individual, no averment or innuendo can make them defamatory. . . Though the words used may at first sight appear only to apply to a class of individuals, and not to be specially defamatory of any particular member of that class, still an action may be maintained by any one individual of that class who can satisfy the jury that the words referred especially to himself. The words must be capable of bearing such special application, or the judge should stop the case. And there must be an averment in the statement of claim that the words were spoken of the plaintiff. The plaintiff may also aver extraneous facts, if any, showing that he was the person expressly referred to." While at first sight the words contended to be libellous in this case may appear to apply only to the subordinate engineers as a class, and not to be specially defamatory of any particular one of them, still if this plaintiff can satisfy the jury that the words referred especially to him, under this rule he would be authorized to maintain the action. He avers in the declaration that they were spoken of and concerning him, and he avers extraneous facts to show that they referred to him; he alleges that during the controversy with the brick company, the defendant ordered that section of the railroad which the plaintiff had surveyed and classified to be

re-surveyed and re-classified, and that whilst this was being done the words complained of were written and published, and that this caused people who read the publication to believe it was intended for him. The author above quoted from also says (*p. 130), "If the application to a particular individual can be generally perceived, the publication is a libel on him, however general its language may be." In the case of Wakley *v.* Healey, 7 C. B. 591, the words complained of were: "We would exhort the medical officers to avoid the traps set for them by desperate adventurers (innuendo, thereby meaning the plaintiff among others), who, participating in their efforts, would inevitably cover them with ridicule and disrepute." The jury found that the words were intended to apply to the plaintiff, and he had judgment. In the case of LeFanu *v.* Malcomson, 1 House of Lords Cases, 637, the words complained of were contained in a newspaper article which imputed that "in some of the Irish factories" cruelties were practiced upon the workpeople; (innuendo, "In the factory of the plaintiffs," who were manufacturers.) The jury were satisfied that the newspaper was referring especially to the plaintiffs' factory, and found a verdict for the plaintiffs, and the House of Lords held the declaration good. Where the words complained of were, "There is strong reason for believing that a considerable sum of money was transferred by power of attorney obtained by undue influence," an innuendo, "Meaning as a fact that the plaintiff had by undue influence procured the money to be transferred," was held not too wide; for such would be the meaning conveyed to readers by the defendant's insinuations. Turner *v.* Meryweather, 7 C. B. 251. See also 13 Am. & Eng. Enc. L. 391; Newell on Slander and Libel, 257 *et seq.;* and note to Townshend on Slander and Libel, 115. Moreover, the words used in this case apply, not to a class, but to a particular group of that class; the difference

being as in saying of a class "all lawyers are thieves,"· and of a group, all lawyers engaged in a particular case, or some of them, are thieves.

It was claimed by counsel for the defendant in error that the action would not lie because there was no charge of any specific crime, act of dishonesty or improper conduct made against the plaintiff, and that the language used was not libellous of the plaintiff; that it was general, indefinite and disjunctive, and made no positive charge against him. But in actions of this kind it is not necessary that a specific crime should be charged, in order for the plaintiff to maintain his action. The plaintiff claims that it was a charge concerning his business and profession, tending to his injury; and our code says, speaking of oral defamation, that "charges made on another in reference to his trade, office or profession, calculated to injure him therein," are actionable, and that no special damage is essential to support the action. Code, §2977. If this be true as to mere slander, much more is it true as to written defamation. Code, §2974. We think, if the words were written of and concerning the plaintiff, they did accuse him of an offence amounting at least to moral turpitude, that he colluded with the brick company against his employer, and charged the latter $100,000 or $150,000 more than was due.

Nor does it make any difference that the words were put in the disjunctive, to wit, "the sub-engineers, or some of them." It may turn out on the trial that the expression "or some of them" was used because the writer did not mean that all were guilty, but that the plaintiff, alone or with others, was guilty. The plaintiff would be equally aggrieved if charged alone, or as one of a number of engineers, and equally entitled to maintain his action.

For these reasons we reverse the judgment of the court below.               *Judgment reversed.*