### THE CITY OF ATLANTA v. MARTIN et al.

The evidence warranted the verdict, and the damages are not so excessive as to require the Supreme Court to interfere.

November 2, 1891.        *Judgment affirmed.*

88   21
123   824

Streets. Damages. Before Judge MARSHALL J. CLARKE. Fulton superior court. March term, 1891.

Mrs. Martin sued the city for damages from personal injuries sustained by her, alleged to have been caused by the negligence of the city in failing to keep in repair a sidewalk on Luckie street. Her husband also sued the city for loss of services, expenses for medicine, medicinal attention, etc., growing out of the injuries. By consent of parties the cases were consolidated. A verdict was rendered in favor of the plaintiffs for $1,000. Defendant moved for a new trial, which motion was overruled. The grounds of the motion were, that the verdict was contrary to law and evidence, and contrary to the charge of the court on the subject of plaintiffs' right of recovery being defeated if Mrs. Martin could have avoided the injury by the exercise of ordinary diligence on her part; and that if under the facts there ought to have been any recovery, the verdict was excessive because, according to the testimony of plaintiffs as to their knowledge of the defective condition of the sidewalk, and as to their neglect and delay in calling a physician to treat the injuries, and the medical testimony as to the effects of this delay in securing proper medicinal treatment promptly, the damages should have been apportioned according to law and the charge of the court on that subject, and when so apportioned the amount of the verdict could not in justice and good conscience have been awarded to plaintiffs, under the facts.

The testimony was to this effect: On the night of March 15, 1888, Mrs. Martin went with her husband to the corner of Luckie and Hunnicutt streets, where there was a church. Her husband went into the church, and she started to the parsonage behind it. On her way there the sidewalk gave way or crumbled off, and she fell in a ditch between the sidewalk and the street.

She managed to get to the parsonage, where her foot was bathed and where she stayed until about eleven o'clock, when she was carried home. Her foot was sore and swollen, and she could not walk nor put on her shoe. She then had several hard chills, and her foot was poulticed by her sister with clay and vinegar. She still suffers from the injury. It was seven months before she could walk without a crutch. Her foot is still swollen. During a part of the seven months when she was not suffering so much, she could sew when work was handed her. She was a dressmaker. Before she was injured, with the assistance of a little girl she did all her domestic work, which now costs from ten to fifteen dollars per month. After the first seven months she tried to move about the house and do some work, and supposes she could do one half as much as before she was hurt for a year and a half after the injury. Before she was hurt she could and did work all day and part of the night, and now her ankle begins to pain her about eleven o'clock and she has to stop. She has suffered greatly. She is forty years old. Before she was hurt she made a dollar a day "and other days more or less," sewing and dressmaking. She can do half as much dressmaking now as before. It was four weeks after she was hurt before she had a physician. When she was hurt she did not know her leg was broken, but she and her husband thought it was a bad sprain. During the four weeks before getting a doctor, it kept getting worse and worse. It did look as if she would have had it examined earlier, but she had done a good deal of nursing and thought herself and sister could get along with it without a doctor. She had never nursed any one with a broken limb. She had a book in which she could read about sprains, and would do what the book said. A small bone of her leg was broken just above the ankle. There was

more pain than usual in such fractures because it was so near the joint, and of such long standing before given the attention of a physician. Usually the bone would have united in four weeks with one of her age, but it took a longer time to unite because not promptly treated by a physician. The bone is now united and there is no evidence of an unsound bone, though the limb is not perfectly sound and she has not full use of it, which condition may be permanent. If the limb had been properly set immediately after the injury, it would have reunited in from four to six weeks, and there would have been much less pain and loss of time. The physician's bills were about $110, and need not have been so large if a physician had been sooner secured. A physician of ordinary capacity, if there had been prompt treatment, could have detected the condition of the limb so that in the course of two or three months she ought to have been as well as ever. The sidewalk was in a bad condition at the time of the injury. It was a dirt sidewalk about two feet in width and sloping towards the ditch. Some complaint had been made to the city authorities before this injury occurred, and in November before some work had been done, but the wet weather and freezes in the winter and early spring made the sidewalk crumble and wash. Mrs. Martin testified that she had been at the place before, but did not know much about its condition; knew it was not a paved street and not a very good street, but did not know it was so dangerous, or she would not have gone there; had been a member of the church for a number of years and a regular attendant there, but when walking to the church it was the custom of herself and husband to come up the other side of Luckie street; had not been a frequent visitor to the parsonage since the August before she was hurt; was careful in walking and is always careful; did not know that it

was so narrow, nor that it was dangerous; knew there was a gully there, but did not know the ground was crumbling; by coming there to church she knew that the gully was by the side of the sidewalk, but did not know the sidewalk was dangerously narrow; never noticed or thought of it; the night was fair; there was a lamp on the street corner, but she did not remember whether it was lighted; she could see the parsonage very well all along; the sidewalk has since been paved with brick, and there has been a general improvement of the neighboring streets. Her husband testified that in walking along this sidewalk one had to be very careful, even in the daytime, especially in wet weather; one could walk on this sidewalk if on the alert all the time looking out and watching; the place where his wife fell was in plain view of the corner by the church in daylight, but not so at night; he let his wife go by herself along there that night; he offered to go with her, thinking she was scared in the dark, but had no idea about her falling, but she told him she was not afraid to go to the parsonage; there was a tolerably good sidewalk on the other side of the street, and he knew that it was better than the sidewalk where his wife was hurt and reckons his wife knew it; she can see pretty well; coming along on one side one could see the other side; he knew all the time that the sidewalk was a desperate place; knew it when he let his wife walk along there that night; and below where she got hurt knew it was worse than where she got hurt.

J. B. Goodwin and J. A. Anderson, for plaintiff in error, cited Field Dam. 130; 10 Mich. 460; 32 Iowa, 329.; 40 Iowa, 638; 51 Me. 439; 94 Ill. 448; 53 Ill. 447.

Cox & Reed, contra, cited Code, §§3067, 2947; 78 Ga. 756; 77 Ga. 578; 71 Ga. 422; 70 Ga. 122.