WESTERN UNION TELEGRAPH CO. *v.* PRITCHETT.

1. A written communication which, in effect, "blacklisted" the person therein referred to, as a "delinquent" debtor of the writer, when he in fact owed the writer nothing, was not privileged on the ground that the same was made to protect the writer's interest in a matter where it was concerned, merely because the inducement prompting the writing and sending of such communication was an expectation of similar favors from

the person addressed, under an agreement between these parties to give each other confidential information as to their respective delinquent debtors.

2. It was not, in the trial of an action for libel founded on such a communication, erroneous to admit in the plaintiff's favor evidence showing that in consequence of such communication he was refused credit by the person to whom it was addressed.

3. That the writer of the communication understood and intended the word "delinquent" to mean something less prejudicial to the plaintiff than its ordinary import, was of no consequence, unless it appeared that the person addressed understood the word in its restricted meaning, and that the writer so intended.

4. There was no error in admitting or rejecting testimony, nor in the charges complained of; and the evidence warranted the verdict.

Argued May 25, — Decided July 25, 1899.

Action for damages.    Before Judge Reid.    City court of Atlanta.    January 7, 1899.

Pritchett sued the Western Union Telegraph Company for damages, alleging in brief that, while he was engaged in business as a merchandise broker in the city of Atlanta, the defendant, maliciously, and intending to injure his good name and credit and induce the Postal Telegraph Cable Company to cease dealing with him, wrote and delivered to the latter company a letter as follows: "Form No. 61.    Office of the Western Union Telegraph Company, Atlanta, Georgia, November 2, 1896.    Mr. Scattergood, Mgr. [meaning the manager of the Postal Telegraph Cable Company.]    Dear Sir: Please add the following names to delinquent list: Pritchett, J. E. [meaning plaintiff.]    Yours truly, J. C. Courtney, Mgr. W." [meaning the defendant's manager]; that the list here referred to, with plaintiff's name on it, was exhibited to many persons; and that it was what is commonly known as a "blacklist," and the placing of his name on it was intended to mean, and by those to whom it was shown was understood as meaning, that he owed the defendant money and lacked the honesty to pay it, which was false, for he owed defendant nothing, and defendant knew this.    The defendant pleaded, among other things, that the writing in question was a privileged communication, because written in pursuance of an agreement between the manager of defendant's office in Atlanta and the manager of

the Postal Telegraph Cable Company's office in the same city, whereby each was from time to time to furnish to the other information of the patrons of the informant's company who had refused or had not been prompt to pay claims for messages sent; that the information thus transmitted was to be held confidential, and to be used only in the conduct of the company's business and for the purpose of aiding the managers in determining what applicants for credit were worthy of it; that under this agreement it became the duty of each manager to furnish to the other the names of such persons as he found to be slow to pay or who refused to pay; that plaintiff had on several occasions prior to the sending of the communication in question been extended credit by defendant for messages forwarded by him over its wires, and did not promptly pay the bills due for them when presented, and it was necessary for the defendant's collector to make several demands on him for payment, after the bills were due, before he would pay them; and that, in transmitting his name to the Postal Telegraph Cable Company's manager, the defendant acted in the best of faith, and in order to secure such information of a similar nature as would be advantageous to it, and without any malicious or wanton purpose.

This plea was stricken on demurrer, and to this the defendant excepted. The trial resulted in a verdict against the defendant, for $190; and it made a motion for a new trial, to the overruling of which it excepted. The motion was upon the grounds that the verdict was contrary to law and evidence, and that the court erred in admitting certain testimony, and in rejecting other testimony, and in certain instructions to the jury. The grounds relating to the admission and rejection of testimony will be sufficiently understood from the opinion of the court. The instructions referred to were as follows: (a) "The law is, that you will interpret yourselves the meaning of the matter alleged to be libelous. If you believe that it means that the plaintiff was falsely and maliciously blacklisted in writing as a delinquent debtor who would not pay his debts, and as lacking in honesty to do so, then the matter would be libelous,—if you believe that is the meaning of it,—and the

plaintiff would be entitled to recover some amount; provided, of course, you believe the matter was published. So that now, if you believe that this matter set forth in this petition was written by the defendant company, or by one of its agents having authority, and it was published by being communicated to any other person than Mr. Pritchett, and if you believe that the meaning of it was to blacklist Mr. Pritchett as a delinquent debtor who would not pay his debts, and with lacking honesty to pay his debts, then the plaintiff would be entitled to recover." (*b*) "To what extent the damages should be mitigated is a question exclusively for the jury. The law says it should be taken into consideration—that if the existence of malice is rebutted by proof it should be taken into consideration by the jury, and the damages should be mitigated; to what extent you should determine." (*c*) "The plaintiff further contends that he is entitled to additional damages, known in law as vindictive or exemplary damages. He contends that this was a tort, charging it to be a libel, and that it was accompanied by aggravating circumstances either in the act or the intention on the part of the defendant, and contends for that reason he is entitled to recover vindictive and exemplary damages in addition to that class of damages to which I have already called your attention. On that proposition the law is this: 'In every tort there may be aggravating circumstances, either in the act or the intention, and in that event the jury may give additional damages, either to deter the wrong-doer from repeating the trespass, or as compensation for the wounded feelings of the plaintiff.'"

*Dorsey, Brewster & Howell* and *Hugh M. Dorsey*, for plaintiff in error. *Maddox & Terrell*, contra.

FISH, J. 1. Unquestionably the communication of which the plaintiff below made complaint gave rise to a cause of action, if, as charged, the same was not in point of fact true and was falsely and maliciously made. "To 'blacklist' a person in writing, and thus publish of and concerning him that he is a delinquent debtor, when in fact he owes nothing, tends to injure his reputation, render him odious, and expose him to pub-

lic contempt." *White* v. *Parks & Co.*, 93 *Ga.* 633. Such a publication does not come within any of the definitions of "privileged communications" given in section 3840 of the Civil Code. As was pertinently said in *Johnson* v. *Bradstreet Co.*, 77 *Ga.* 172, a "contract to pry into and give information concerning the business of another does not create such a public or private duty, legal or moral, as would make a false communication injurious to another privileged." In the present instance, it appeared that the communication in question was made in pursuance of a private arrangement between the defendant and another telegraph company, entered into solely with a view to their mutual benefit, whereby each furnished to the other information concerning the standing and credit of all persons who were deemed by it to be of questionable responsibility in business transactions. Counsel for the company, upon the argument before us, sought to draw a distinction between the present case and those above cited, on the idea that there was a vast difference between conducting, for pecuniary profit, what is commonly known as a mercantile agency, and merely entering into such a private arrangement as that above detailed, with bona fide intentions of making a mutual exchange of reliable and valuable information necessary to an intelligent and profitable prosecution of the business in which the parties were engaged. Doubtless such an arrangement may be eminently proper, if its practical operation be not to injuriously affect third persons not parties thereto; but as the only ground upon which any one could logically base a right to enter into an arrangement of this sort would be his constitutional privilege of free speech, the important qualification expressly made by our fundamental law, to the effect that every one assuming to exercise such privilege shall be "responsible for the abuse of that liberty," certainly should not be overlooked. In a word, while one undoubtedly has a right to impart to another information for which the latter applies with a view to using the same for a legitimate purpose, yet communications made under such circumstances are in no proper sense privileged, for the simple though abundant reason that no sound argument can be advanced why they should be so considered. It is to be noted, in this connection,

that in *White's* case, supra, it appeared that the defendants "were members of a certain merchants' association," and were not engaged in conducting a mercantile agency; so the point now raised has practically been heretofore definitely settled by this court.    Obviously, in making the communication now under consideration, the defendant company was prompted by the expectation of gain, in that it would in return receive like information from the Postal company.    It was not essential to the protection or preservation of any right connected with any matter in which either company had an interest that they should enter into a mutual agreement of the character above outlined.    Silence on the part of either could not have in any way whatsoever affected it to its prejudice; neither was compelled to speak in order to protect its interests in a matter wherein it was even remotely concerned.    Accordingly, the communication complained of can not properly be said to be merely one of those "statements made with the bona fide intent on the part of the speaker to protect his own interest in a matter where it is concerned," which paragraph 3 of section 3840 of our Civil Code declares shall be deemed privileged.

2.  Complaint is made that, on the trial in the court below, the plaintiff was permitted to introduce testimony to the effect that when he applied to the Postal company for credit, he was told by the officials in charge of its office that they could not take any of his messages until he had satisfied the Western Union company on an account he owed it.    Clearly, it was competent for the plaintiff to show that, as a result of the alleged libel, his credit was actually impaired and he was subjected to the mortification of being refused indulgence by the company to whom the defendant's libelous communication was addressed.

3.  As a matter of defense, counsel for the defendant company offered to prove that, in making use of the term "delinquent," it intended to convey a meaning somewhat less prejudicial to the plaintiff's character than that term, if given its ordinary import, would seem to suggest.    That is to say, counsel sought to introduce testimony to the effect that it was customary for the officials of that company to indifferently characterize as "de-

linquents," not only such persons as "would not pay," but also such as were considered "slow pay," in that they failed to settle within two months after their accounts became due. In the absence of proof going to show that the person to whom the libelous communication was addressed understood this word in the restricted sense intended by the writer thereof, we are wholly at a loss to perceive what relevancy the evidence thus offered had upon any issue in the case.

4. The evidence upon which the plaintiff relied for a recovery fully warranted the verdict; and as no error was committed either in admitting or in rejecting testimony, and as the charges complained of were substantially in accord with the law as herein announced, no reason appears why the finding of the jury should be disturbed.

*Judgment affirmed. All the Justices concurring.*