## 46319. SOUTHEAST BANKCARD ASSOCIATION, INC. v. WOODRUFF.

JORDAN, Presiding Judge. Woodruff commenced this action in libel against Southeast Bankcard Association, Inc., claiming, among other things, actual damage to his reputation as a businessman by reason of the publication of his name in a credit card cancellation bulletin.

The bulletin, of which 10,460 copies were printed, was distributed in April, 1969, to member banks, including two in Columbus, Georgia, and through these banks to merchants using Master Charge service. It is addressed to member banks and merchants of SEBA, and was effective as of March 1, 1969. The cover includes instructions not to honor any Master Charge or Interbank Charge card listed in the bulletin, but to hold the card and call "your bank's" security officer in the Master Charge credit department or call the security department of SEBA, and the promise of a $25 reward for the recovery of any card on the list. The cover also includes a disclaimer stating that the listing of a cardholder in the bulletin does not reflect on the character or credit of the cardholder, and a warning that the bulletin is confidential and must not be exhibited to cardholders or customers of member banks or merchants.

On the inside of the cover is an explanation that SEBA bank listings appear first, followed by Interbank listings. It is then stated in boldface that "This page can increase your income up to $100." Below are printed the words "Most wanted" in larger bold-face, under which is a listing of one bank, the name of a cardholder (not the plaintiff), the cardholder's account number, another bold-face statement, "These are the most wanted credit cards," a further statement, in small bold-face, to the effect that SEBA will pay up to $100 for these cards, $50 immediately, and finally the statement "If you supply us with information or cause the arrest and conviction of its user, we'll send you another $50 immediately."

Immediately following are 21 numbered pages, untitled except p. 5, which has at the top "Most wanted card" and has listed thereon the same bank, cardholder, and account number shown

on the inside of the front cover, and no others. This same listing also appears on p.1 with other listings. The plaintiff's name and account number appear on p. 3 with others under the Fourth National Bank of Columbus, Georgia.

The evidence further discloses that at some time before March 17, 1969, the defendant, at the request of the Fourth National Bank of Columbus, sent two Master Charge cards to the bank bearing Woodruff's name and an account number, and that on or about March 17 the bank mailed the cards to Woodruff. These cards were unsolicited by Woodruff. On or about March 20, on the basis of the cards purportedly allowing him a line of credit up to $500, Woodruff sought to borrow $500 from the bank, and the bank, after a credit investigation, refused to make the loan. Between March 20 and March 27 the bank orally requested that Woodruff return the cards, and by letter dated March 27, 1969, notified him that his charge card privilege had been discontinued, that effective immediately charges to his Master Charge account would not be honored, and he was asked, for his protection, to return the Master Charge cards and the notice within five days in an enclosed envelope. The plaintiff did not comply with these instructions. It also appears that SEBA listed Woodruff's name and account in the bulletin upon receiving information from the bank to the effect that his credit limit had been reduced to zero.

At the time of the foregoing events the plaintiff was operating a service station business in Columbus. Some 30 or 40 days after he received the Master Charge card a close friend, identified by name and as working at a business using Master Charge service, informed the plaintiff that his name was listed in the cancellation bulletin, and provided the plaintiff with a copy.

The case is here on appeal from the overruling of a motion for summary judgment for the defendant, and in his order the trial judge expressed the opinion that the defendant had "not pierced the allegations of the complaint that the publication of the complaint did actual damage to the plaintiff's reputation as a businessman, viz.: a retail dealer in the sale of gasoline, oil and related merchandise in Columbus."

We affirm. The defendant, as the movant for summary judgment,

must show that the plaintiff cannot recover, and this a defendant may accomplish by showing that in respect to an essential element of the alleged claim the evidence is conclusive for the defendant, thus entitling the defendant to judgment as a matter of law. See *Taylor v. Bolton,* 121 Ga. App. 141 (173 SE2d 96); *Standard Oil Co. v. State Neon Co.,* 120 Ga. App. 660 (171 SE2d 777); *Weekes v. Parker,* 120 Ga. App. 549 (171 SE2d 660); *Stanley v. Carpenter,* 118 Ga. App. 607 (164 SE2d 883); *Shadix v. Dowdney,* 117 Ga. App. 720 (162 SE2d 245).

However well-intentioned the conduct of SEBA in publishing the card cancellation bulletin, and notwithstanding the disclaimer on the cover, we are of the opinion that whether the publication is libelous to the plaintiff is one which a jury should determine. Even though words be innocently or negligently spoken or printed, but not maliciously, if the plaintiff suffers special damage as a result, he may nevertheless recover for such damage. *Bradstreet Co. v. Oswald,* 96 Ga. 396 (23 SE 423).

The evidence fails to disclose as a matter of law that the publication is free of libel. While a reader might conclude that the card with Woodruff's name and account number is not in the "Most wanted" category, there is no way whereby a reader may determine the reason Woodruff's card, along with numerous others listed therein, is wanted. What are the implications? Had Woodruff abused his credit privilege, or was the card wanted because it was lost, misplaced or stolen? Would a reader finding Woodruff's name listed therein be likely to extend credit to Woodruff, or would he immediately become suspicious or exceedingly cautious in any business dealings with Woodruff? While this court has recognized that the issuer, or one acting for the issuer of a credit card, has a responsibility to prevent unauthorized use (*Standard Oil Co. v. State Neon Co.,* 120 Ga. App. 660, supra), this does not, in our opinion, free the issuer, or one acting for the issuer, from the concomitant responsibility of preventing unauthorized use in a manner to avoid libel by innuendo with respect to the cardholder.

*Judgment affirmed. Quillian and Evans, JJ., concur.*

ARGUED JUNE 2, 1971—DECIDED SEPTEMBER 8, 1971—

REHEARING DENIED SEPTEMBER 29, 1971.

*Neely, Freeman & Hawkins, Edgar A. Neely, Jr., Jones, Bird & Howell, Trammell E. Vickery,* for appellant.

*Smith, Cohen, Ringel, Kohler, Martin & Lowe, Robert W. Beynart,* for appellee.