**David Pope HOOD, Plaintiff-Appellant,**

v.

**DUN & BRADSTREET, INC.,**
**Defendant-Appellee.**

No. 72–1233.

United States Court of Appeals,
Fifth Circuit.

Sept. 14, 1973.

Rehearing and Rehearing En Banc
Denied Oct. 31, 1973.

26

Rex T. Reeves, Merrell Collier, Atlanta, Ga., for plaintiff-appellant.

Hugh M. Dorsey, Jr., W. Rhett Tanner, Atlanta, Ga., for defendant-appellee.

Before GOLDBERG, AINSWORTH and INGRAHAM, Circuit Judges.

INGRAHAM, Circuit Judge:

This is an action for libel predicated upon allegedly false and defamatory statements published in a credit report provided by defendant Dun & Bradstreet, Inc. The district court, 335 F. Supp. 170, granted defendant's motion for summary judgment, holding that defendant was entitled to a conditional privilege under Georgia law and that there was an absence of actual malice on behalf of the defendant necessary to overcome a conditional privilege. Plaintiff appeals.

The issues on appeal are as follows: (1) whether the statements are libelous, and if so, whether they are libelous per se; (2) whether defendant is entitled to a conditional constitutional privilege under the First Amendment and New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); (3) whether defendant is entitled to a conditional privilege under Georgia law; and (4) the necessary proof of damages.

The material facts of the case are undisputed. Plaintiff David Pope Hood is a building contractor conducting the principal business of the construction of gasoline filling stations in and around Atlanta, Georgia. He has been engaged in the construction business for approximately twenty-seven years and has maintained a good reputation in conducting his financial affairs and operating the business.

The defendant is a credit reporting agency which prepares and provides for its subscribers credit information regarding virtually any person or business organization. The credit information is provided to subscribers pursuant to a written contract which specifically states that any information furnished by the defendant is for the sole use of the subscriber.

On October 11, 1968, the defendant Dun & Bradstreet prepared a credit report on the plaintiff and distributed the report to eleven subscribers. Included in this report were four allegedly libelous statements which read as follows:

"(1) In interview of October 10 1968 Mrs. Hood referred all details to her husband who had been inavailable (sic) for comment to date.

"(2) As a matter of interest, David P. Hood has always declined financial information other than to say that sales are in excess of $100,000 and that net worth is in excess of $3,000. These two estimates were submitted in July 1967.

"(3) Public records reveal suit # 248479 filed June 10 1968, for $103, Whittock Dobbs Inc. v. subject. Also suit # 238558 filed Apr 3 1968, Westron Corp vs. subject.

"(4) Although complete details are not available, working capital appears limited at times with some trade, slowness noted."

Defendant acknowledges that the two law suits reportedly filed against plaintiff were actually filed against another individual named David Hood. Defendant does not dispute the falsity of the additional statements in the report.

Plaintiff filed suit in the District Court of the Northern District of Georgia, alleging that the published statements were false and defamatory, that such statements tended to harm him in his business, and that as a consequence of the statements he had in fact suf-

fered injury. Both parties filed motion for summary judgment, and the district court granted defendant's motion, holding that defendant was entitled to a conditional privilege under Georgia law, and that there was no showing of actual malice to overcome the privilege.

## I. *Libel or libel per se*

Pursuant to Georgia law, an action for libel lies where a published statement is false and defamatory, "tending to injure the reputation of an individual, and exposing him to public hatred, contempt or ridicule."[1] Additionally, the definition of slander in Georgia has been incorporated into the definition of libel,[2] and therefore false and defamatory statements made in regard to another in "his trade, office, or profession calculated to injure him therein" also constitutes an action for libel.[3]

Georgia also acknowledges that in addition to libel per se, there is libel by innuendo. While plain and unambiguous words must be construed in the normal and ordinary meaning, ambiguous words may be clarified in meaning by "reference to the circumstances" and thereby constitute libel by innuendo.[4]

In accordance with these principles, the district court properly resolved the issue whether the statements made by defendant were libelous, and if so, whether they were libelous per se. Essentially, the district court held that the first two statements were plain, unambiguous and harmless and therefore clearly did not constitute libel. Such statements simply do not injure the plaintiff's reputation and do not expose him to public hatred, contempt or ridicule as required under Georgia law.

The additional two statements, however, were found by the district court to be ambiguous and therefore capable of being libelous by innuendo where the ambiguity is clarified by reference to the circumstances. Moreover, the district court declined to hold that the statements were libelous per se as they did not "impute to another conduct, characteristics or a condition incompatible with proper exercise of lawful business or trade." Seaboard Warehouse Terminals, Inc. v. Dun & Bradstreet, Inc., 328 F.Supp. 291 (S.D.Fla., 1971). Consequently, a jury might conclude that the final two statements are libelous by innuendo. Hood v. Dun & Bradstreet, Inc., 335 F.Supp. 170 (N.D.Ga., 1971).

## II. *First Amendment Privilege*

Defendant contends that the publication of a false credit report should be afforded a conditional constitutional privilege whereby Dun & Bradstreet would not be liable for such communication unless the plaintiff can prove that the publication was made with actual malice. Under New York Times v. Sullivan, *supra,* and more specifically Rosenbloom v. Metromedia, Inc.,

1. Dun & Bradstreet, Inc. v. Miller, 398 F.2d 218, 222 (5th Cir., 1968); Ga.Code Ann. § 105–701 (1935). The statute describes libel as "a false and malicious defamation of another, expressed in print, or writing, or pictures, or signs, tending to injure the reputation of an individual, and exposing him to public hatred, contempt, or ridicule. The publication of the libelous matter is essential to recovery."

2. Hardy v. Williamson, 86 Ga. 551, 12 S.E. 874 (1891); Southland Publishing Co. v. Sewell, 111 Ga.App. 803, 143 S.E.2d 428 (1965).

3. Ga.Code Ann. § 105–702 (1935). The statute describes slander as "imputing to another a crime punishable by law; or, second, charging him with having some contagious disorder, or being guilty of some debasing act which may exclude him from society; or, third, in charges made against another in reference to his trade, office, or profession, calculated to injure him therein; or, fourth, any disparaging words productive of special damage flowing naturally therefrom. In the last case, the special damage is essential to support the action; in the first three, damage is inferred."

4. Central of Georgia Ry. v. Sheftall, 118 Ga. 865, 45 S.E. 687 (1903).

403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971), defendant asserts that a credit report is constitutionally protected by the First Amendment guarantees of freedom of the press because it is a matter of "general or public interest." In accordance with the Third[5] and Tenth[6] Circuits, the district court held that defendant was not entitled to such a privilege because the medium was not incompassed in the area of constitutional protection. Furthermore, the district court held that the freedom of discussion and debate on public issues does not apply where the communication pursuant to contractual terms is to be kept in strict confidence. We agree.

Whether or not a credit report is privileged as a matter of public interest must be answered in light of the constitutional guarantees of the First Amendment. In New York Times v. Sullivan, *supra,* the Supreme Court declared that pursuant to First Amendment freedoms a "public official" could not recover for libelous statements unless he could prove that the statements were made with "actual malice." Actual malice was defined by the Court as "knowledge that [the statement] was false or reckless disregard of whether it was false or not." Subsequent Supreme Court decisions expanded this rule to include "public figures"[7] and matters of "general or public interest."[8] As stated previously, defendant contends that the credit report falls within the scope of matters of public or general interest and consequently is afforded the First Amendment protection of free speech.

We hold that matters of general and public interest do not include libelous and defamatory publications of such a commercial nature as credit reports. The concept of purely commercial speech as an area where First Amendment protection does not apply was originally articulated in Valentine v. Chrestensen, 316 U.S. 52, 62 S.Ct. 920, 86 L.Ed. 1262 (1942). In *Valentine* a city ordinance that banned the distribution of handbills soliciting a submarine tour was challenged as violative of First Amendment rights. The Supreme Court upheld the ordinance declaring that commercial speech was unprotected by the First Amendment. It is important to note that the transaction in *Valentine* was nothing more than the solicitation of a commercial venture. While the *Valentine* decision might have been subsequently weakened in some respects,[9] the commercial speech doctrine was revitalized recently in Pittsburgh Press Co. v. Pittsburgh Com'n on Human Relations, 413 U.S. 376, 93 S.Ct. 2553, 37 L.Ed.2d

5. Grove v. Dun & Bradstreet, Inc., 438 F.2d 433 (3rd Cir., 1971), cert den., 404 U.S. 898, 92 S.Ct. 204, 30 L.Ed.2d 175 (1971). The Third Circuit in *Grove* distinguished *New York Times* basically upon three grounds. First, the court held that private credit reports were not the type of medium that is entitled to First Amendment protection. Second, the confidential nature of a credit report prevented it from being of such a public nature so as to claim First Amendment protection. Third, the court held that credit reporting was not "opinion, comment, or criticism," but was of a factual nature. The Tenth Circuit in Kansas Elec. Supply Co. v. Dun & Bradstreet, Inc., 448 F.2d 647 (10th Cir., 1971), cert. den., 405 U.S. 1026, 92 S.Ct. 1289, 31 L.Ed.2d 486 (1972), relied upon the rationale of the Third Circuit, holding that the credit standing of a business enterprise was not a matter of "real public interest" and that such a medium that simply provided credit information to a narrowly defined readership was not entitled to First Amendment protection. The Seventh Circuit in Oberman v. Dun & Bradstreet, Inc., 460 F.2d 1381 (7th Cir., 1972), also specifically relied on the reasoning set forth by the Third Circuit.

6. Kansas Elec. Supply Co. v. Dun & Bradstreet, Inc., 448 F.2d 647 (10th Cir., 1971), cert. den., 405 U.S. 1026, 92 S.Ct. 1289, 31 L.Ed.2d 486 (1972). *See also* Oberman v. Dun & Bradstreet, Inc., 460 F.2d 1381 (7th Cir., 1972).

7. Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1966).

8. Rosenbloom v. Metromedia, Inc., 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971); Bon Air Hotel v. Time, Inc., 426 F.2d 858 (5th Cir., 1970).

9. *See* Cammarano v. United States, 358 U.S. 498, 513–515, 79 S.Ct. 524, 3 L.Ed.2d 462 (1959) (Douglas, J., concurring); Joseph Burstyn v. Wilson, 343 U.S. 495, 501, 72 S. Ct. 777, 96 L.Ed. 1098 (1952).

669. The Court in *Pittsburgh Press* upheld an ordinance that prohibited newspapers from referring to sex in employment headings in want ads. The Court distinguished *New York Times,* pointing out that the Court there was concerned with a publication that "communicated information, expressed opinion, recited grievances, protested claimed abuses and sought financial support on behalf of a movement whose existence and objectives are matters of the highest public interest and concern." The Court found that the commercial advertisements were more in accordance with the principles of *Valentine* than with those of *New York Times* because the commercial advertisements did not express such social policies. Similarly, because this commercial credit report did not express social concerns and grievances of the type described above, we find that such a report coincides with the doctrine of commercial speech. On the facts of this case, the credit report was distributed pursuant to a written contract, whereby the report was to be maintained in strict confidence. It was distributed to an extremely limited readership of eleven subscribers for commercial purposes and clearly without regard to social concerns or grievances. The report referred to plaintiff only in regard to his business and his relationship with business associates in a commercial capacity. Consequently, we hold that such credit reports do not fall within the definition of matters of general or public interest.

### III. *Privilege under Georgia law*

Defendant's second contention in regard to privilege is that credit reporting agencies should be afforded a conditional privilege based on Georgia law. To determine the validity of this contention it is necessary for us to examine case authority, statutory enactments and the underlying principles of the conditional privilege itself.

Initially, we point out that the great majority of jurisdictions, with the exception of Georgia [10] and Idaho,[11] confronting this issue has held that the credit reporting agency is entitled to a conditional privilege.[12] Georgia presently has a statute that delineates the conditional privilege and provides as follows:

> Privileged communications. The following are deemed privileged communications:
>
> 1. Statements made bona fide in the performance of a public duty.
>
> 2. Similar statements in the performance of a private duty; either legal or moral.
>
> 3. Statements made with the bona fide intent, on the part of the speaker, to protect his own interest in a matter where it is concerned.

Ga.Code Ann. § 105–709. If this court were to consider the statute in a vacuum, conceivably we could find that credit reports would fall within its provisions and, therefore, would be entitled to a conditional privilege. As early as

---

10. *E. g.* Johnson v. The Bradstreet Co., 77 Ga. 172 (1886).

11. *E. g.* Pacific Packing Co. v. Bradstreet Co., 25 Idaho 696, 139 P. 1007 (1914).

12. *E. g.* Altoona Clay Prods., Inc. v. Dun & Bradstreet, 367 F.2d 625 (3rd Cir., 1966) (Application of Pennsylvania law); H. E. Crawford Co. v. Dun & Bradstreet, 241 F.2d 387 (4th Cir., 1957) (Application of North Carolina law); Watwood v. Stone's Mercantile Agency, Inc., 90 U.S.App.D.C. 156, 194 F.2d 160 (1952); Riley v. Dun & Bradstreet, 172 F.2d 303 (6th Cir., 1949) (Application of Tennessee law); Hooper-Holmes Bureau v. Bunn, 161 F.2d 102 (5th Cir., 1947) (Application of Florida law); Pomeroy v. Dun & Bradstreet, 146 F.Supp. 59 (D.Or., 1956); Stationer's Corp. v. Dun & Bradstreet, 62 Cal.2d 412, 42 Cal.Rptr. 449, 398 P.2d 785 (1965); Melcher v. Beeler, 48 Colo. 233, 110 P. 181 (1919); Putnal v. Inman, 76 Fla. 553, 80 So. 316 (1918); Ideal Motor Co. v. Warfield, 211 Ky. 576, 277 S. W. 862 (1925); Retail Credit Co. v. Garraway, 240 Miss. 230, 126 So.2d 271 (1961); Mitchell v. Bradstreet Co., 116 Mo. 226, 22 S.W. 358 (1893); Restatement of Courts § 595 (1938); W. Prosser, Law of Torts 790 (4 Ed. 1970); Comment, Protecting the Subjects of Credit Reports, 80 Yale L.J. 1035 (1971).

1886, however, the Supreme Court of Georgia was confronted with the issue of whether a credit reporting agency was entitled to a conditional immunity and held that it was not. In construing an identical statute, the Georgia Supreme Court reasoned in Johnson v. The Bradstreet Co., 77 Ga. 172 (1886), that a credit report concerning the plaintiff in that case was false and therefore immoral. Since immoral contracts were void, there was no duty, legal or moral, and consequently the credit reporting was not included within the provisions of the conditional privilege statute. Furthermore, in a subsequent decision the Georgia Supreme Court reiterated that there was no conditional privilege in regard to credit reporting in Georgia simply because "no sound argument can be advanced why they should be so considered." Western Union Telegraph Co. v. Pritchett, 108 Ga. 411, 34 S.E. 216 (1899), see Southeast Bankcard Ass'n v. Woodruff, 124 Ga.App. 478, 184 S.E.2d 191 (1971).

■ Therefore, this court must determine whether there are compelling reasons why we should deviate from these early Georgia decisions. We recognize that federal courts are not immutably bound under Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), to follow state court decisions where it appears that a state court considering the identical issue would not rely on such precedent.[13] The federal court, like the state court, can consider all information and data that the highest court of the state could consider in determining whether to strictly adhere to a prior ruling.[14]

■ The district court, in anticipation of what a state court might hold, reexamined the issue of conditional privilege in regard to credit reporting agencies and concluded that the agency was entitled to such a privilege. The court set forth principally two reasons why a state court would arrive at a conclusion different from that expressed in the early pronouncements of the Georgia Supreme Court. First, relying on Cochran v. Sears & Roebuck Co., 72 Ga.App. 458, 34 S.E.2d 296 (1945), a Georgia court of appeals decision, the district court declared that one should not be held liable for libelous statements where they are made without malice, are properly limited in scope, are limited in distribution, and are made pursuant to a private legal obligation such as a contract. But, see Southeast Bankcard Ass'n v. Woodruff, supra. Second, the court relied on the public interest in the availability of credit information in a commercialized society.

Although the district court's reasoning is not totally without merit, we find there are other controlling reasons that would convince a state court to adhere to the early decisions of the Supreme Court of Georgia. The first reason relates to the underlying principle of the conditional privilege itself. The fundamental reason for allowing credit reporting agencies to claim the conditional privilege was first enunciated in 1914.[15] The reason was predicated upon the idea that if no privilege existed, the reporting agencies would be driven out of business by the cost of defamation suits. Consequently, sources of credit information would be unavailable, credit would be

---

13. Lester v. Aetna Ins. Co., 433 F.2d 884 (5th Cir., 1970) ; C. Wright, Law of Federal Courts, 239–40 (2d Ed. 1970).

14. C. Wright, Law of Federal Courts, 239–40 (2d Ed. 1970).

15. Smith, Conditional Privilege for Mercantile Agencies, 14 Colum.L.Rev. 187 (1914). Mr. Smith describes the reason for the conditional privilege as follows:
"If such communications are not protected by the law from the danger of vexatious litigation in cases where they turn out to be incorrect in fact, the stability of men engaged in trade and commerce would be exposed to the greatest hazard, for no man would answer an inquiry as to the solvency of another. . . . [C]an it be desirable to impose conditions of immunity so stringent as to discourage the giving of information and thus diminish materially the probability that the desired information will be obtained by persons in need of it?"

difficult to obtain, and as a result the commercial growth of our nation would suffer. Since 1914 the courts have blindly applied the privilege to credit reporting agencies apparently without examining the fundamental reason for the conditional immunity. We find at least two reasons why a Georgia court would adhere to its earlier supreme court decisions.

First, this case demonstrates that in one of the states that has refused to grant the privilege, credit reporting agencies exist and are thriving on the credit reporting business. If the basic assumption underlying the rule was correct, presumably there would be no credit reporting agencies in Georgia or Idaho. Additionally, we find that Dun & Bradstreet is not the only credit reporting agency doing a thriving business in Georgia, but there are at least twenty others, one of which is Retail Credit Co., one of the largest such organizations in the United States. Moreover, an empirical study that was prepared comparing credit transactions in Boise, Idaho, where there is no privilege,[16] with a city in its neighboring state, Spokane, Washington, where the privilege exists,[17] also lends support to the assertion that in those states where no conditional privilege is recognized, credit information is readily available and thus does not inhibit commercial credit transactions.[18] Irresistible logic and the absence of empirical verification compel this court to conclude that the privilege should not be blindly applied to credit reporting agencies in this case.

A second reason for our decision is that in recent years there has been an apparent shift in emphasis from the protection of the credit reporting agency to the protection of the individual or business enterprise being investigated. The growth in consumer protection in regard to credit reporting is obvious from legislation such as the Fair Credit Reporting Act (FCRA). 15 U.S.C.A. §§ 1681–1681t (Supp.1971). Pursuant to the FCRA, the credit agency must disclose to the consumer the substance and sources of information upon its demand, *id.* § 1681d, the consumer has a right to correct and explain information contained in the report, *id.* § 1681i, and it may limit access to those who have a "legitimate business need." *Id.* § 1681b(3)(E). Furthermore, the Act does not preclude an action at common law except where information that would give rise to a cause of action is obtained by the complainant pursuant to the provisions of the Act. *Id.* § 1681h(e).[19] We feel, therefore, that based upon information and data such as empirical analysis and contemporary notions of consumer protection, the district court should have adhered to the early decisions of the Georgia Supreme Court and held that there was no conditional privilege afforded defendant under Georgia law.

IV. *Damages*

 In an action for libel under Georgia law, the plaintiff must specifically allege, F.R.Civ.P. 9(g), and prove special damages where the defamatory statement is not libel per se. Mell v. Edge, 68 Ga.App. 314, 22 S.E.2d 738, 739 (1942). Special damages are those damages that "actually flowed from the

---

16. Pacific Packing Co. v. Bradstreet Co., 25 Idaho 696, 139 P. 1007 (1914).

17. *See* Woodhouse v. Powles, 43 Wash. 617, 86 P. 1063 (1906); W. Prosser, Law of Torts, 790 n. 25 (4th Ed., 1970). *Contra,* Denney v. Northwestern Credit Ass'n, 55 Wash. 331, 104 P. 769 (1909) (dictum).

18. University of Idaho, Credit Practices of Retailers and Financers of Furniture and Home Appliances in Two Northwest Cities (1963); Comment, Protecting the Subjects

of Credit Reports, 80 Yale L.J. 1035, 1051 (1971).

19. The provision reads as follows:
"[N]o consumer may bring any action or proceeding in the nature of defamation, invasion of privacy or negligence with respect to the reporting of information against any consumer reporting agency . . . based on information disclosed pursuant [to the Act], except as to false information furnished with malice or willful intent to injure such consumer."

act." Ga.Code Ann. § 105–2006 (1935). More specifically, special damages are sustained where there is a "loss of money, or some other material temporal advantage capable of being assessed in monetary value." Mell v. Edge, *supra;* see C. McCormick, Damages, 419 (1935). The loss of employment, income or profits is categorized as special damages and is sufficient injury upon which to predicate an action for libel where the defamatory words are not libelous per se.

Plaintiff specifically alleges two grounds upon which he might prove special damages. First in Bradstreet Co. v. Oswald, 96 Ga. 396, 23 S.E. 423 (1894), the Georgia Supreme Court categorized as special damages the pecuniary expense incurred by the plaintiff in removing from customers' minds the effect of false statements made in a credit report. Accordingly, plaintiff's complaint specifically alleges that he suffered special damages of incurring pecuniary loss in terms of total hours expended in removing from the minds of certain business associates the harmful effect of the false statements. Plaintiff elaborated in his answers to defendant's interrogatories, responding to the effect that it was necessary for him to contact several persons, including a bonding company, an insurance agent and a banker in order to procure letters of reference, and an accountant for true and correct financial information. Furthermore, plaintiff was required on two occasions to confer with representatives of Dun & Bradstreet, consult with his personal attorney, and to contact various persons associated with certain oil companies, for which he constructed gasoline filling stations, in order to convince them of his true credit standing and to urge that they again place his name on their lists of bid invitees from which it might have been removed.

Second, plaintiff asserts that the flow in his business has decreased without any specific reference to customers or construction projects. The requirement of special damages is also satisfied where "the plaintiff can, under the circumstances, only know that the flow of his business as a whole is diminished, and it would be impossible to point to any specific customers, or orders which have been lost . . . ." C. McCormick, Damages 422 (1935). Plaintiff contends that he knows he has suffered such a loss based upon information derived from plaintiff's books kept in the ordinary course of business. Therefore, the alleged injury sustained is specifically plead by plaintiff and affords him at least the opportunity to prove to the jury that he has sustained special damages.

To justify remanding this case for trial, it was necessary for us to point out that there were allegations in the pleadings and answers to interrogatories to support plaintiff's ability to prove special damages, a prerequisite to any recovery where the statement is not libelous per se. It would be premature, however, to further discuss plaintiff's claims for damages. The measure of general damages that is presumed by law is limited only by the sole discretion of the jury absent bias or prejudice. Brown v. Autry, 78 Ga. 753, 3 S.E. 669 (1887). Malice, necessary to support an award of punitive damages, is inferred by law from the character of the defamation where there is an absence of lawful excuse or the absence of a privilege. Ga.Code Ann. §§ 105–2002, 105–2003 (1935); see Atlanta Journal Co. v. Doyal, 82 Ga.App. 321, 60 S.E.2d 802 (1950). Furthermore, where the plaintiff proves by satisfactory evidence that the "defendant has acted in bad faith, or has been stubbornly litigious, or where he has caused the plaintiff unnecessary trouble and expense," the jury may award the expenses of litigation. Ga. Code Ann. § 20–1404 (1935); see Atlanta Journal Co. v. Doyle, *supra.*

Because there are sufficient facts indicating that plaintiff might have been able to prove special damages and thereby recover for injury incurred as a result of publication of the libelous

and defamatory statements made in the credit report, we reverse and remand for trial.

AINSWORTH, Circuit Judge (dissenting):

Both plaintiff and defendant moved the court for summary judgment contending that there was no genuine issue of material fact and that judgment as a matter of law was required. The district judge, however, sustained defendant's motion for summary judgment and held that the Dun & Bradstreet report was conditionally privileged on the basis of Ga.Code Ann. § 105–709, and that the uncontroverted evidence showed the credit statement which pertained to plaintiff was published without malice and was properly issued to eleven subscribers of defendant. The court found that the evidence was insufficient to raise a jury question.

I am in agreement with the reasons expressed by the district judge in his detailed order granting defendant's motion for summary judgment. I also agree with the district court that the ancient Georgia cases of Johnson v. The Bradstreet Co., 77 Ga. 172 (1886) and Western Union Telegraph Co. v. Pritchett, 108 Ga. 411, 34 S.E. 216 (1899), rendered 87 and 74 years ago, are based upon odd reasoning, are distinguishable on their facts, and should not be followed. We are not bound under Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), to give blind allegiance to these decisions. *See* Shelp v. National Surety Corporation, 5 Cir., 1964, 333 F.2d 431; Union Bank & Trust Co. of Mt. Holley, N. J. v. First Nat. Bank, 5 Cir., 1966, 362 F.2d 311. *See also* Peacock v. Retail Credit Company, 5 Cir., 1970, 429 F.2d 31.

The majority concedes that practically all of the states of this country afford a conditional privilege to credit reports published in limited fashion to subscribers. Only Georgia and Idaho are said to be to the contrary. I am unpersuaded by the majority opinion that the reasons which underlie the decisions of the many states which grant a conditional privilege to credit reports are insupportable or that contemporary notions no longer favor the privilege.

Since I believe the district court's decision should be affirmed, I respectfully dissent.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

Before GOLDBERG, AINSWORTH and INGRAHAM, Circuit Judges.

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.

AINSWORTH, Circuit Judge (dissenting):

I dissent from the denial of the petition for rehearing.