## 30699. AIKEN *v.* CONSTITUTION PUBLISHING COMPANY.

DECIDED MARCH 8, 1945. REHEARING DENIED MARCH 28, 1945.

*G. Seals Aiken,* pro se.

*Moise, Post & Gardner,* for defendant.

PARKER, J.   G. Seals Aiken (herein referred to as the plaintiff) sued the Constitution Publishing Company, a corporation (herein called the defendant), to recover $50,000 for the publication of an alleged libelous letter.   The trial judge dismissed the petition on general demurrer, and to that judgment the plaintiff excepted.

The petition alleges that on February 9, 1944, and subsequently thereto, the defendant owned, controlled, and published a newspaper known as The Atlanta Constitution; that on said date the defendant "recklessly, wilfully, wantonly, and maliciously" printed, published, and circulated on the editorial page of said newspaper the following article:

### "DEMOCRATIC?"

"Editor, Constitution:   The following statement was recently made by the temporary chairman of the Georgia Democrats seeking preferential presidential primary:   'I do not deny the right of the New Dealers, Fourth Termers, and Communists to vote for Roosevelt with his associates, Communist Browder, Communist Hillman, Austrian Frankfurter, John L. Lewis, and other radicals, but I do deny their right to deprive Georgia Democrats of a primary in which to vote their own choice of a genuine Democrat for President.'   I think it is rather out of taste for a Justice of the Supreme Court of the United States, whose appointment was duly confirmed by the senate and who is recognized for his outstanding ability, to be referred to in the above manner.   On the other hand, I feel that the commander-in-chief as well as the President of these United States deserves the respect of his office, for, after all, he is President of every citizen, irrespective of his political creed.   As far as John L. Lewis is concerned, he supported the Republican and not the Democratic ticket.   In the above statement, no mention is made of Fascists.   It seems to me that the

statement would be more in keeping with what you could expect from Hitler and Hirohito, rather than from a Democrat. If the individual American decides in his judgment to vote for a President for the third, fourth, or fifth time, and the ballot is the expression of their will, is there anything undemocratic about it? Armand May, Atlanta."

The petition further substantially alleges that said newspaper containing said article was published and circulated by the defendant in every State of the United States, in foreign countries, and "among the armed forces of the United States throughout the world;" that the plaintiff has been a lifelong citizen and resident of Georgia and the United States, and "a lifelong and ardent supporter" of the constitutions of the United States and Georgia, and the principles of the Declaration of Independence; that he was admitted to the bar in Georgia in June, 1920, and for many years has been admitted to and practiced in the Federal courts, including the Supreme Court, as well as in the courts of Georgia; that when admitted to the bar he took the required oath to demean himself justly and uprightly as a lawyer and to support the constitutions of Georgia and of the United States, and that he has faithfully kept that oath; that "he had established prior to the publicity by defendant of said article the reputation of a lawyer of ability, industry, loyalty, and honesty;" that "he had also earned and acquired the reputation of a citizen of unquestioned patriotism," and "had earned and enjoyed the good will, respect, esteem, and confidence of patriotic citizens throughout the country;" that "he has always maintained a personal and professional character and reputation above reproach;" that he had "established an extensive and profitable law practice;" that he had spent much of his time "supporting the constitutions of the United States and Georgia and the great principles of liberty and justice upon which the government of the United States is based;" that "he had earned and enjoyed a wide influence among the people of Georgia, especially, and the South and the United States in general for his patriotic work in behalf of the American system of government as expressed in the Declaration of Independence, the constitution of the United States, and the constitutions of the various States of the Union;" that "he was able through said influence to lead other people to uphold and defend the American

252

system of government and to protect the lives, liberties, and properties of his clients under the law;" that said article "is a false and malicious defamation of the plaintiff and . . was published and circulated by the defendant with full knowledge of its falsity and with malice toward plaintiff;" that "said libelous article was printed, published, and circulated by the defendant for the deliberate purpose of destroying the excellent personal and professional reputation of plaintiff, as well as his reputation as a patriotic citizen, and to destroy his influence in . . defending the great American representative system of government;" that "said libel has succeeded in its purpose with many thousands of people in Georgia and throughout the country and elsewhere who held plaintiff in high esteem immediately before its publication;" that said libel of plaintiff by defendant was "calculated and intended, and did tend, to seriously injure the reputation of plaintiff and expose him to public hatred, contempt, and ridicule;" that "the false charges contained in said libelous article have seriously impaired plaintiff's professional reputation and severely and permanently damaged and reduced his extensive law practice." Paragraph 25 of the petition follows: "The said article published by the defendant insinuates that plaintiff is a 'Fascist' or a member of the notorious, corrupt, despotic gang established by Mussolini of Italy. It charges in effect and in substance that the plaintiff is a disciple or follower of Hitler, the notorious gangster leader of Germany and enemy of the United States, and Hirohito, the pagan emperor of the Japanese Empire and enemy of this country, and that plaintiff's language quoted in said article is 'more in keeping with what you could expect from Hitler and Hirohito, rather than from a Democrat'." The petition further substantially alleges that said article "accuses plaintiff of exercising bad taste in referring to Felix Frankfurter as an Austrian," accuses plaintiff of being disrespectful to the President of the United States, and questions his democracy and "his loyalty to the principles of the Democratic party as established by . . Jefferson;" that said article "charges in effect and substance that plaintiff is undemocratic because he subscribes to the principles of Washington, Jefferson, and the other patriots and founders of our republican form of government and their successors in opposing more than two terms for any president;" that said article charges that

"plaintiff is not a patriot because he insists upon maintaining government . . by law under the constitution of the United States instead of personal government," and "because he does not give unswerving allegiance to the New Deal . . instead of the constitution of the United States;" that, "with the exception of the quoted statement of plaintiff in said article," said article "is false, malicious, and libelous per se as a whole and in its component parts, . . and was false, malicious, and libelous per se when it was deliberately and maliciously published . . as aforesaid;" that "said article (with the exception of the quoted statement of plaintiff therein), including said headline, is a false and malicious defamation of G. Seals Aiken, tending to injure his reputation, both personally and professionally, and expose him to public contempt, hatred, and ridicule;" that when the plaintiff made the statement quoted in said article, he was "serving as temporary chairman of the Georgia Democrats seeking a presidential preferential primary" and said article "was meant and intended by the defendant to specifically refer to the plaintiff and was so understood by the public;" that "said article, including the headline, was maliciously published by the defendant . . for the malicious purpose of injuring G. Seals Aiken, influencing the public to hate . . plaintiff and hold him in contempt and unworthy of the respect and confidence of the public, and for the purpose of degrading his splendid personal and professional reputation and usefulness and influence as a patriotic citizen and lawyer;" that on February 11, 1944, the plaintiff delivered to the defendant a reply to said article, with the request that this reply be published "in the same conspicuous place the defendant published the attack on plaintiff:" that a copy of said reply is attached to the petition as "Exhibit A;" that the "defendant ignored and failed and refused to publish said reply," and on February 14, 1944, the plaintiff "wrote the defendant a letter giving notice to the defendant it must either print his reply in full . . as it published the attack upon plaintiff under the name of Armand May, or accept the legal consequences," a copy of said letter being attached to the petition as "Exhibit B;" that the "defendant persisted in its failure and refusal to publish plaintiff's reply, and on February 15, 1944, the plaintiff sent another letter to the defendant," a copy of same being attached hereto as "Exhibit C;" that said quotation in the

February 9, 1944 publication of May's letter was made in a speech before the Georgia State Senate in January, 1944, in favor of a presidential preferential primary in Georgia; that "defendant did not carry in its paper a quotation of said statement from plaintiff's speech at the time it was made;" that "defendant did not consult or notify plaintiff . . about the preparation, receipt, or publication of said article published by it;" that pursuant to the Code, § 105-712, the plaintiff "gave notice in writing to the defendant specifying the libelous article and the statements therein which he claimed to be false and defamatory, and further stating . . what he claimed to be the true statement of fact, all as shown" by Exhibits A, B, and C, supra; that in compliance with the Code, § 105-712, said notice was "given to the defendant at least five days before instituting this action;" that said article "imputes to plaintiff false, malicious, selfish, ulterior, and unpatriotic motives;" that "the acts of the defendant in printing, publishing, and circulating the libelous article . . were so malicious, deliberate, and injurious . . that a large sum of punitive damages should be awarded . . in addition to general and special damages."

The controlling question in this case is whether the article alleged to be libelous, or any part of it, is actually libelous. The defendant contends that it is not libelous, and can not be made so by the construction placed upon it in the petition. "Any false and malicious defamation of another in any newspaper . . tending to injure the reputation of any individual and expose him to public hatred, contempt, or ridicule, shall constitute a newspaper libel, the publication of such libelous matter being essential to recovery." Code, § 105-703. "A libel is published as soon as it is communicated to any person other than the party libeled." § 105-705. "A publication claimed to be defamatory must be read and construed in the sense in which the readers to whom it is addressed would ordinarily understand it. So, the whole item, including the display lines, should be read and construed together, and its meaning and signification thus determined. When thus read, if its meaning is so unambiguous as to reasonably bear but one interpretation, it is for the judge to say whether that signification is defamatory or not. If, upon the other hand, it is capable of two meanings, one of which would be libelous and actionable and the other not, it is for the jury to say, under all the circumstances sur-

rounding its publication, including extraneous facts admissible in evidence, which of the two meanings would be attributed to it by those to whom it is addressed or by whom it may be read." Washington Post Co. *v.* Chaloner, 250 U. S. 290 (39 Sup. Ct. 448, 63 L. ed. 987). This rule was quoted and applied in *Brandon* v. *Arkansas Fuel-Oil Co.,* 64 *Ga. App.* 139, 145 (12 S. E. 2d, 414). The language of an alleged libel "is to be taken in its plain and natural meaning, and to be understood by courts and juries as other people would understand it, and according to the sense in which it appears to have been used and the ideas it is adapted to convey to those who read it." · Lancour *v.* Herald & Globe Association, 111 Vt. 371 (17 Atl. 2d, 253, 132 A. L. R. 486). "The office of an innuendo is to explain that which is of doubtful or ambiguous meaning in the language of the publication, but cannot enlarge the meaning of words plainly expressed therein." *Park* v. *Piedmont &c. Ins. Co.,* 51 *Ga.* 510; *Holmes* v. *Clisby,* 118 *Ga.* 820 (45 S. E. 684); *Spence* v. *Johnson,* 142 *Ga.* 267 (82 S. E. 646, Ann. Cas. 1916A, 1195); *Paschal* v. *Georgian Co.,* 43 *Ga. App.* 195 (158 S. E. 372). "If the words are incapable of the meaning ascribed to them by the innuendo, and are prima facie not actionable, the judge at the trial will stop the case." Odgers' Libel and Slander (5th ed.), p. 116.

"In a declaration claiming damages for words calculated to injure the plaintiff's reputation as an attorney at law, it is not sufficient to allege that the defendant was an attorney, it must be stated and proven that the words were used 'in reference to his profession.' " *Van Epps* v. *Jones,* 50 *Ga.* 238. "Words to be actionable per se, as tending to injure the plaintiff in his trade, profession, or business, must contain a charge made on him in reference to such trade, profession, or business." *Witham* v. *Atlanta Journal,* 124 *Ga.* 688, 691 (53 S. E. 105, 4 L. R. A. (N. S.) 977). "To charge a physician with having stolen the land of a certain person is not a charge made on another in reference to his profession, so as to be actionable without an allegation of special damage," *Jones* v. *Bush,* 131 *Ga.* 421 (3) (62 S. E. 279). While the *Jones* case is an action for slander, the rule stated therein is equally applicable to libel. "Any statement published of an attorney at law with respect to his profession is actionable if it tends to injure or disgrace him as a member of his profession. Oral or written words

which impute to him a want of the requisite qualifications to practice law or which charge him with dishonest or improper practices in the performance of his duties as an attorney are actionable per se." But to make words spoken or written of an attorney at law actionable per se, "they must affect him in his professional character." 33 Am. Jur. 88, § 76. "A defamatory charge, whether oral or written, touching an attorney in his profession, is actionable per se . . . A charge of dishonesty or breach of trust made against an attorney in regard to property or clients under his control, or an imputation of unfaithfulness generally to clients, imports a lack of qualities essential to a lawyer in his professional character, and is actionable. Charging an attorney with soliciting business is libelous per se. A charge of ignorance or want of skill in a particular transaction is not actionable, unless the charge is such as imports gross ignorance or unskilfulness. . . But words charging an attorney with want of integrity, whether used generally of his profession or particularly as to some one transaction, are actionable per se. As in the case of imputations affecting persons in their professional capacities generally, it is essential that the charge should actually touch the attorney in his profession. [Among the numerous authorities cited to support this last statement, is the Georgia case of *Van Epps* v. *Jones*, supra.] But it has been held that in order that words may touch an attorney in his profession it is not essential that they should be expressly applied by the speaker to his profession, provided they directly tend to injure him in respect to it, although when they convey only a general imputation upon his character, equally injurious to any one of whom they might be spoken, they are not actionable unless such application is made." 36 C. J. 1184, § 79.

The occasion for the alleged libelous article appears on its face, and the petition alleges that the plaintiff's quoted statement was made "in a speech before the Georgia State Senate on or about the 12th day of January, 1944, in favor of a presidential preferential primary in Georgia." That statement was as follows: "I do not deny the right of the New Dealers, Fourth Termers, and Communists to vote for Roosevelt with his associates, Communist Browder, Communist Hillman, Austrian Frankfurter, John L. Lewis, and other radicals, but I do deny their right to deprive Geor-

gia Democrats of a primary in which to vote their own choice of a genuine Democrat for President." The following parts of the alleged libelous article are so obviously innocuous that to state them is to show that they are not libelous: (1). "I think it is rather out of taste for a Justice of the Supreme Court of the United States . . to be referred to in the above manner." (2). "On the other hand, I feel that the commander-in-chief as well as the President of these United States deserves the respect of his office, . . irrespective of his political creed." (3). "As far as John L. Lewis is concerned, he supported the Republican and not the Democratic ticket." (4). "If the individual American decides in his judgment to vote for a President for the third, fourth, or fifth time, and the ballot is the expression of their will, is there anything undemocratic about it?"

This brings us to that part of said article which plaintiff strenuously contends is libelous. It is: "In the above statement, no mention is made of Fascists. It seems to me that the statement would be more in keeping with what you could expect from Hitler or Hirohito, rather than from a Democrat." In paragraph 25 of his petition the plaintiff alleges that "said article published by the defendant insinuates that plaintiff is a 'Fascist' or a member of the notorious, corrupt, despotic gang established by Mussolini of Italy." The word "Fascist" occurs in said article only once, and the name Mussolini does not appear in it at all. The part of said article to which the above allegation of the petition must refer is this single sentence: "In the above statement, no mention is made of Fascists." We are satisfied that this sentence does not mean, and can not be construed to charge, either directly or indirectly, that the plaintiff is a Fascist. Neither do we think that said article charges directly or indirectly that "the plaintiff is a disciple or follower of Hitler . . and Hirohito." The extract from the plaintiff's speech before the Georgia Senate is quite acrimonious, and is far from complimentary to the President of the United States and his political followers. Mr. May's letter published in defendant's newspaper is headed "Democratic." Mr. May and the plaintiff evidently belonged to widely different schools of political thought. The plaintiff thought that he and those of his school of thought were "genuine" democrats, and that the President and his followers were not "genuine" democrats. Mr. May

took exception to this conclusion of the plaintiff, and to the language in which it was expressed. The part of said article with which we are now dealing is the sentence: "It seems to me that the statement would be more in keeping with what you could expect from Hitler or Hirohito, rather than from a Democrat." Viewing this sentence in the light of the entire published article, and considering the framing of the sentence and the plain meaning of its words, it is not reasonably susceptible of the meaning put upon it in the petition. We find nothing in said article which tends to impair the plaintiff's "professional reputation" and damage his law practice. The article contains no reference to the plaintiff's profession. Indeed, it in no way indicates what his vocation is; and "it must be stated and proven that the words were used 'in reference to his profession.'" *Van Epps* v. *Jones,* supra. See also the numerous authorities cited that bear upon the same question.

We hold as a matter of law that said article was not libelous for any reason urged by the plaintiff, and that the court did not err in dismissing the petition on general demurrer. What has been said above necessarily controls all the other assignments of error, and it is not necessary to deal separately with them.

*Judgment affirmed. Sutton, P. J., and Felton, J., concur.*