**David Pope HOOD**

v.

**DUN & BRADSTREET, INC.**

**Civ. A. No. 13148.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Dec. 1, 1971.

Reeves & Collier, Atlanta, Ga., for plaintiff.

Hansell, Post, Brandon & Dorsey, Atlanta, Ga., for defendant.

## ORDER

RICHARD C. FREEMAN, District Judge.

This is a civil action arising from an allegedly defamatory and false publication by defendant, a mercantile agency, in regard to plaintiff, a general contractor. For the alleged libel, plaintiff seeks general damages, punitive damages and attorneys' fees. The case has been submitted to the court on motions for summary judgment by both plaintiff and defendant and on plaintiff's motion to strike certain defenses from defendant's answer.

The facts which comprise the background of this lawsuit are, in the main, not disputed, and may be summarized as follows: Defendant Dun & Bradstreet, Inc., is a mercantile agency which was, and is, engaged in preparing and furnishing to its subscribers credit reports on individuals, firms and corporations engaged in business in Georgia and throughout most of the world. Such reports are furnished to subscribers who have signed a contract with defendant, which contract specifies that the information furnished is for the exclusive use of the subscribers and shall not be shown to other persons.

The alleged libel occurred when defendant prepared and distributed to eleven (11) subscribers on or about October 11, 1968, a "Business Information Report" regarding the plaintiff David Pope Hood in his business as general contractor. The four statements in that report which plaintiff alleges to be libelous are as follows:

(1) "In interview of October 10 1968 Mrs. Hood referred all details to her husband who has been inavailable (sic) for comment to date."

(2) "As a matter of interest, David P. Hood has always declined financial information other than to say that sales are in excess of $100,000 and that net worth is in excess of $3,000. These two estimates were submitted in July 1967."

(3) "Public records reveal suit #248479 filed June 10 1968, for $103, Whittock Dobbs Inc. vs. subject. Also suit #238558 filed Apr 3 1968, Westron Corp vs. subject."

(4) "Although complete details are not available, working capital appears limited at times with some trade, slowness noted." [1]

1. The full text of the Business Information Report is as follows:

### DUN & BRADSTREET BUSINESS INFORMATION REPORT

| 15 11 | 00–373–6885 | CD 69 Oct 11 1968 | Started | Rating |
|---|---|---|---|---|
| Hood, David P. | | General Contractor | 1951 | |

3320 Northside Dr. P O Box 325
Hapeville Ga 30054
 Tel 404 767–8575

Summary

| | | | | | Payments Employs Record | Gen PPT 4 Business |
|---|---|---|---|---|---|---|
| Payments | HC | OWE | P DUE | TERMS | OCT 10 1968 | SOLD |
| | 2500 | 7000 | | 2 10prox Disc | | Over 3 yrs to 5–68 |
| | 15000 | | | Lot is Completed Ppt | | Over 3 yrs to 9–68 |
| | 8000 | | 30 | Ppt | | 2 yrs to 8–68 |
| | Hi 3 Figs | | 30 | Ppt | | Over 3 yrs 9–68 |

FINANCE In interview of Oct 10 1968 Mrs. Hood referred all details to her husband who has been inavailable for comment to date.

As a matter of interest, David P. Hood has always declined financial information other than to say that sales are in excess of $100,000 and that net worth is in excess of $3,000. These two estimates were submitted in July, 1967.

Efforts to gain further details from outside quarters were unsuccessful.

Public records reveal suit #248479 filed June 10, 1968, for $103, Whittock Dobbs Inc. vs. subject. Also suit #238558 filed Apr 3 1968, Westron Corp. vs. subject.

Investigation continues.

Although complete details are not available, working capital appears limited at times with some trade, slowness noted.

BANKING Balances average low four figures. Relations satisfactory.

HISTORY HOOD, born 1923, married, native of Hapeville, Ga. Partners with his father, Charles Hood, building contractor from 1951 to 1953. Continued until 1953 when discontinued and Hood began operating individually. 1945–1951 employed by his father. · 1942 to 1945 U.S. Army. Employed by Western Electric Corporation from 1940 to 1942.

OPERATION General building contractor specializing in small buildings, primarily service stations. Territory covers the metropolitan Atlanta area with usual terms calling for a 10% retainage until completion and acceptance of job. Four employees. LOCATION: Operation conducted from residence and also maintains a small office on Lees Mill Rd., College Park, Ga. 10–11 (33 73)

THIS REPORT MAY NOT BE REPRODUCED IN WHOLE OR IN PART IN ANY FORM OR MANNER WHATEVER. It is furnished by DUN & BRADSTREET, INC. in *strict* confidence at your request under your subscription agreement for your exclusive use as a basis for credit, insurance, marketing and other business decisions and for no other purpose. These prohibitions are for your own protection—your attorney will confirm the seriousness of this warning. Apprise DUN & BRADSTREET promptly of any question about the accuracy of information. DUN & BRADSTREET does not guarantee the correctness of this report and shall not be liable for any loss or injury caused by the neglect or other act or failure to act on the part of said company and/or its agents in procuring, collecting or communicating any information.

Defendant apparently does not dispute the allegation that all four of these statements were in fact false, and it is clearly acknowledged that the two lawsuits in the report were actually filed against a different person, also named David Hood.

On November 6, 1968, plaintiff's attorney telephoned an employee of Dun & Bradstreet and informed defendant of the erroneous report. On November 7, defendant mailed correction notices [2] regarding the erroneous report of two lawsuits to the eleven subscribers who had received the "Business Information Report" dated October 11, 1968.

Plaintiff alleges that such false statements published in regard to him were libelous in that they were calculated to harm him in his business and that such defamations did in fact cause him injury.

Plaintiff has renewed his motion to strike portions of defendant's answer, which motion was denied by order of Judge Henderson dated May 19, 1970. For the reasons stated in that order, the court denies plaintiff's motion to strike.

Plaintiff's motion for judgment and summary judgment is set forth in numbered paragraphs, each of which seeks summary judgment as to one of the defenses set forth in defendant's answer. Plaintiff seeks summary judgment in paragraphs two, three, four and five as to defendant's eighth, ninth, tenth and eleventh defenses, which are based on freedom of the press and New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) and its progeny. In paragraph six of this motion plaintiff moves for summary judgment on defendant's fifth defense, which is that the publication was conditionally privileged under Georgia law. Summary judgment as to defendant's first defense of failure to state a claim upon which relief can be granted is sought in paragraph seven of plaintiff's motion. Paragraph eight seeks summary judgment holding that the words published by defendant were libelous and libelous per se and that the plaintiff may recover general damages without proof of special damages.

2.

DUN & BRADSTREET REPORT

| SIC | D–U–N–S | DATE OF REPORT | STARTED | RATING |
|---|---|---|---|---|
| | 00–373–6885 | SN 69 Nov 7 1968 N | | |
| 15 11 | Hood, David P. | GENERAL CONTRACTOR | 1951 | —— |

3320 NORTHSIDE DR.
P O BOX 325
HAPEVILLE GEORGIA 30054
TEL 404 767–8575

| CORRECTION | CORRECTION | CORRECTION |
|---|---|---|

Fulton County Records disclosed that two suits were entered against a David Hood, Hapeville, Ga., one April 3, 1968 and another July 10, 1968. Erroneously, both were listed in our report as being against the subject, David P. Hood. This information should be disregarded.

The facts are that both suits were entered against another David Hood in Hapeville, Georgia, who was doing business as Chicken King Restaurant at 955 Virginia Ave.

There are no suits or judgments against the subject, David P. Hood.
11–7 (4 59)

PLEASE NOTE WHETHER NAME, BUSINESS AND STREET ADDRESS CORRESPOND WITH YOUR INQUIRY.
This report is furnished by DUN & BRADSTREET, Inc. in STRICT CONFIDENCE at your request under your subscription agreement for your exclusive use as a basis for credit, insurance, marketing and other business decisions and for no other purpose. DUN & BRADSTREET, Inc. does not guarantee the correctness of this report and shall not be liable for any loss or injury caused by the neglect and/or other act or failure to act on the part of said company and/or its agents in procuring, collecting or communicating any information.

Defendant has filed a motion in which it seeks summary judgment for the following reasons:

(1) The statements were not libelous and if they were, they were not libelous per se, and since plaintiff has suffered no special damages, plaintiff cannot recover;

(2) Commercial credit reports are entitled to the qualified privilege accorded the press by the First Amendment and New York Times v. Sullivan and its progeny;

(3) Commercial credit reports are conditionally privileged under the laws of Georgia;

(4) There was no actual malice on the part of defendant which would operate to defeat the qualified constitutional privilege or the conditional privilege under Georgia law;

(5) Plaintiff is not entitled to recover general damages in this case;

(6) Plaintiff has not suffered any actual damages;

(7) Plaintiff is not entitled to attorneys' fees; and

(8) Plaintiff is not entitled to punitive damages.

It is obvious from a mere listing of the contentions made by the parties that there is considerable overlapping of the issues raised by the two motions. For that reason, and for the sake of clarity, the court will deal with the issues of law which are raised by the motions and the facts in the following order:

I. Did the statements constitute libel under Georgia law? Did they constitute libel per se?

II. Was the publication of the statements protected by the qualified privilege afforded by the First Amendment and New York Times v. Sullivan?

III. Was the publication conditionally privileged under Georgia law?

IV. Were the statements published with express malice?

Because of the court's resolution of the above issues, it is unnecessary to deal with the question of damages.

## I. DID THE STATEMENTS CONSTITUTE LIBEL UNDER GEORGIA LAW? DID THEY CONSTITUTE LIBEL PER SE?

 A libel is constituted under Georgia law when a false and defamatory statement is published which tends to injure the reputation of an individual and which exposes him to public hatred, contempt or ridicule.[3] Charges made against a person in reference to his trade, office or profession, calculated to injure him therein are considered libel per se.[4]

 In Georgia there may be libel by innuendo if the meaning of the allegedly libelous words becomes clear only by a showing of their particular meaning in context or by evidence of circumstances outside the writing which render the words defamatory. As the Supreme Court of Georgia held in Central of

3. Ga.Code Ann. 105–701. Libel defined; necessity of publication.—A libel is a false and malicious defamation of another, expressed in print, or writing, or pictures, or signs, tending to injure the reputation of an individual, and exposing him to public hatred, contempt, or ridicule. The publication of the libelous matter is essential to recovery.

4. The categories set forth in the definition of slander are considered incorporated into the definition of libel. Hardy v. Williamson, 86 Ga. 551, 12 S.E. 974 (1891); Southland Publishing Company v. Sewell, 111 Ga.App. 803, 143 S.E.2d 428 (1965); Davis v. Macon Telegraph Publishing Company, 93 Ga.App. 633, 92 S.E.2d 619

(1956). The definition of slander reads: Ga.Code Ann. 105–702. Slander defined; inference of damage; special damage.—Slander, or oral defamation, consists, first, in imputing to another a crime punishable by law; or, second, charging him with having some contagious disorder, or being guilty of some debasing act which may exclude him from society; or, third, in charges made against another in reference to his trade, office, or profession, calculated to injure him therein; or, fourth, any disparaging words productive of special damage flowing naturally therefrom. In the last case, the special damage is essential to support the action; in the first three, damage is inferred.

Georgia Ry. Co. v. Sheftall, 118 Ga. 865, 45 S.E. 687 (1903):

> Words which are clearly not defamatory cannot have their natural meaning changed by innuendo. Words which are libelous per se do not need an innuendo. But between these two extremes are found many expressions which may be ambiguous, and the real meaning can then be explained by reference to the circumstances. It is for the jury in such instances to say whether, in view of all the facts, the writing was libelous.

In this respect, an allegedly libelous statement must be construed in the sense in which the readers to whom it is addressed would ordinarily understand it. Haggard v. Shaw, 100 Ga.App. 813, 112 S.E.2d 286 (1959); Aiken v. May, 73 Ga.App. 502, 37 S.E.2d 225 (1946); Aiken Constitution Pub. Co., 72 Ga.App. 250, 33 S.E.2d 555 (1945).

■■ Applying the Georgia law to the four allegedly libelous statements in the "Business Information Report," it appears that the first two of the statements could not be considered libelous per se or even ambiguous so as to require a jury's consideration of them. To say that plaintiff has been unavailable for comment to date and that his wife referred all details to her husband does not tend to injure the plaintiff's reputation or expose him to public contempt. or ridicule. Such a statement is clearly harmless and unambiguous. The same is true of the statement that Hood had always declined financial information other than to say that sales were in excess of $100,000 and net worth in excess of $3,000. The figures stated are clearly indicated as lower limits and are not set forth as the actual amount of sales or net worth; as a result, such statements cannot be construed as defamatory. As the Fifth Circuit held in a case which presented facts similar to those before the court in this action, such statements were "plain, harmless and not reasonably susceptible of reflecting injury upon the reputation of appellee so as to justify jury consideration." Dun & Bradstreet v. Miller, 398 F.2d 218, 223 (5 Cir., 1968).

■■ As to the remaining two statements, however, the court finds that they are ambiguous and might, in fact, be considered libelous. The third allegedly libelous statement is that, "Public records reveal suit #248479 filed June 10, 1968, for $103, Whittock Dobbs Inc. vs. subject. Also suit #238558 filed Apr 3 1968, Westron Corp. vs. subject." Plaintiff argues that the report of two suits against plaintiff would indicate to those doing business, or considering doing business with him that he had failed to pay his bills and that such suits were filed to collect unpaid debts. It is urged that such statements were detrimental to the plaintiff's financial and business ability and standing.

While it may well be that the Dun & Bradstreet subscribers who requested and received this "Business Information Report" interpreted the report of two suits as reflecting adversely upon the credit rating and standing of plaintiff, such an interpretation is not the only reasonable one which could be given to such report. A lawsuit might be filed against an individual for many reasons having no relationship whatsoever to his business. While it is, of course, true that a very large claim for damages even in a suit wholly unrelated to his business or his financial standing, such as a personal injury suit, would cast some doubt upon the defendant's future financial standing, one of the two suits mentioned in the Dun & Bradstreet report was listed as being for only $103. However, as even plaintiff has pointed out, there is some ambiguity involved in the reporting of that lawsuit, for Mr. Hurayt, a vice-president of Dun & Bradstreet, said in his deposition that the sum as reported might have been interpreted as $103,000.00.

■ The fourth allegedly libelous statement was, "Although complete details are not available working capital appears limited at times with some trade, slowness noted." In his deposition, Hurayt said that Dun & Bradstreet intended the language "slowness noted" to mean that the subject of the report was slow in paying his bills and debts. While

that meaning may have been clearly understood by those who wrote it, the language itself is ambiguous and the relevant question in a libel suit is what the langauge meant to those who read it, not to those who wrote the words. As for the comment that "working capital appears limited at times," such statement cannot be libelous per se in this instance, for it is not clear that the statement is actually false. It is hardly likely that plaintiff, an independent general contractor, has access to unlimited capital. Truth is a complete defense to any charge of libel. Ga.Code Ann. § 105–708. Moreover, since it appears axiomatic that the capital of any individual proprietor must be limited at times, a statement to that effect would not appear to be defamatory or detrimental.

Because of the ambiguity presented by some portions of the allegedly defamatory report, the court refuses to hold that the report in question was not libelous. At the same time, however, the court declines to hold that the statements were libelous per se. None of the allegedly libelous statements is per se incompatible with the proper exercise of plaintiff's business, Seaboard Warehouse Terminals, Inc. v. Dun & Bradstreet, Inc., 328 F.Supp. 291 (S.D.Fla.1971); but the court holds that a jury might find that the statements regarding the lawsuits and the "slowness noted" were libelous by innuendo.

## II. WAS THE PUBLICATION OF THE STATEMENTS PROTECTED BY THE QUALIFIED PRIVILEGE AFFORDED BY THE FIRST AMENDMENT AND NEW YORK TIMES V. SULLIVAN?

Defendants strongly assert that the publication of the "Business Information Report" by Dun & Bradstreet should be afforded a qualified constitutional privilege such that Dun & Bradstreet would not be liable for defamatory falsehoods published therein except to the extent that plaintiff could prove that the false statements were published with actual malice. Defendant relies upon a line of cases commencing with the Supreme Court's holding in New York Times v. Sullivan that "the constitutional guarantees require * * * a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." 376 U.S. 254 at 279, 84 S.Ct. 710 at 726. The Supreme Court held that such a rule is required by the First Amendment protections of freedom of speech and freedom of the press and the "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." New York Times v. Sullivan, 376 U.S. 254 at 270, 84 S.Ct. 710 at 721.

Defendant is correct in stating that the rule set forth in Times v. Sullivan has been considerably broadened in its application; the conditional privilege has been accorded to publications regarding "public figures"[5] and to matters of "public interest."[6] Defendant seeks to broaden the constitutional privilege still further and in support of its argument points out that credit reporting is an integral part of both the commercial and personal aspects of life in our society. That is, of course, not disputed, but the relevant question is whether or not the subject matter of the credit report is of "public interest." Plaintiff herein and subject of the report in issue is a single proprietor general contractor whose business is primarily the building or remodeling of gasoline service stations. His credit rating or financial standing

---

5. Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1966); Associated Press v. Walker, 388 U.S. 130, 87 S.Ct. 1975, 19 L.Ed.2d 1094 (1966).

6. Rosenbloom v. Metromedia, Inc., 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971); Bon Air Hotel, Inc. v. Time, Inc., 426 F.2d 858 (5th Cir. 1970).

cannot possibly be construed as a matter of public interest such as would bring the credit report within the rule set forth in *Rosenbloom*.

While this is an issue as yet untreated by the Fifth Circuit, both the Third Circuit and the Tenth Circuit have dealt with cases remarkably similar to the instant action. In Grove v. Dun & Bradstreet, 438 F.2d 433 (3rd Cir. 1971), cert. den. 404 U.S. 898, 92 S.Ct. 204, 30 L.Ed. 2d 175 (Oct. 19, 1971), the court held that the business or credit standing of a corporation engaged in the brokerage of brick and tile was not a matter of public interest; the Tenth Circuit issued a similar finding in regard to a wholesale electric supply company in Kansas Electric Supply Company, Inc. v. Dun & Bradstreet, Inc., 448 F.2d 647 (10th Cir. 1971).

█ In addition, there is a more fundamental reason why the publication of the "Business Information Report" is not entitled to constitutional protection. This court agrees with the holding in Grove v. Dun & Bradstreet, *supra*, that the defendant's publication is not a medium entitled to the constitutional protection based on the First Amendment. As was held in Packaging Industries, Inc. v. Dun & Bradstreet, 67 Civil 4638 (S.D. N.Y.1969):

> [T]his defendant, for a fee, presents private clients with a confidential report. It comes before this court in a situation quite unlike that of *Sullivan* and *Butts*. It has not assumed the role of informing the public at large; pursuant to its own requirement confidentiality must be maintained. The application of a special privilege to this case would be an extension well beyond the limits previously established.

The basis of New York Times v. Sullivan and its progeny is the high value placed upon public airing of wide varieties of views on all subjects. However, the interest in freedom of discussion has no application when the publication involved is by agreement between the publisher and the subscriber kept from public view and insulated from any public discussion of its contents. The report itself contains the proviso that *"This Report may not be reproduced in whole or in part in any form or manner whatever.* It is furnished by Dun & Bradstreet, Inc. in *strict confidence* at your request under your subscription agreement for your exclusive use as a basis for credit, insurance, marketing and other business decisions and for no other purpose."* (Emphasis in the original.) By so severely limiting the audience to which the publication is communicated, defendant has removed its "Business Information Report" from the arena of public discussion and as a result cannot claim the privilege which is afforded to those publications which contribute to public information, opinion or discussion.

The court therefore holds that defendant is not entitled to the qualified privilege as set forth in New York Times v. Sullivan. As a result, the case must be dealt with in accordance with the principles of Georgia law.

### III. WAS THE PUBLICATION CONDITIONALLY PRIVILEGED UNDER GEORGIA LAW?

█ Under the law of Georgia, some communications, such as the pleadings filed in a court of competent jurisdiction, are deemed absolutely privileged.[7] Other communications are privileged only conditionally. The Georgia Code provides in pertinent part as follows:

105–709. Privileged communications.—

The following are deemed privileged communications:

1. Statements made bona fide in the performance of a public duty.

2. Similar statements in the performance of a private duty; either legal or moral.

---

7. Ga.Code Ann. § 105–711.

3. Statements made with the bona fide intent, on the part of the speaker, to protect his own interest in a matter where it is concerned.

However, Georgia law provides that if an otherwise privileged communication is made with malice and not bona fide in promotion of the object for which the privilege is granted, it shall give rise to an action for libel.[8]

Defendant argues that the "Business Information Report" is entitled to a conditional privilege under Georgia law in that it was made in the performance of a private legal contractual duty to its subscribers or, in the alternative, because it was made to protect the interests of Dun & Bradstreet in a matter in which it was concerned. It is the position of plaintiff that decisions of the Georgia courts have established that commercial credit reports are not entitled to the conditional privilege in Georgia. In support of his argument plaintiff cites two cases in particular—Johnson v. Bradstreet Co., 77 Ga. 172 (1886) and Western Union Telegraph Co. v. Pritchett, 108 Ga. 411, 34 S.E. 216 (1899).

In the case of Johnson v. Bradstreet the court was dealing with a credit report issued by the predecessor of the defendant in the present case, which stated that the subject of the report, the plaintiff, was drinking and failing in business and that it would be well to watch and be slow to trust him. In denying defendant the conditional privilege the court held that the communication was not in pursuance of a private moral duty, because it is immoral to write evil and false criticisms of a man, especially when the writer will gain monetarily from the communication. Since the communication was immoral and since all immoral contracts are void under Georgia law, the court concluded that the communication was not in pursuance of a private legal duty.

While a holding such as that in Johnson v. Bradstreet seems to rest more on emotions and antiquated notions of morals than on principles of law, it is that case which is the basis of plaintiff's assertion that Georgia law holds that reports published by mercantile agencies are not conditionally privileged. The case of Western Union Telegraph Co. v. Pritchett, 108 Ga. 411, 34 S.E. 216 (1899), relies on Johnson v. Bradstreet and otherwise fails to give adequate support to its conclusion that the exchange of credit information, under a private contractual arrangement, is not a privileged communication.

The two cases relied upon by plaintiff were decided before the turn of the century and thus long before the rise in significance of the commercial credit reporting industry. The basis for the early decisions by the Georgia Supreme Court was that the furnishing of credit information was immoral if false; in the context of present commercial practices and the widespread reliance upon mercantile agencies, the imposition of liability for an erroneous, even if innocent, credit report must be reexamined. As neither the parties nor the court have found any Georgia decision on the question since the year 1899, the court feels that it cannot blindly rely upon the outdated precedent cited by plaintiff. It is with a firm conviction that the Georgia courts would also feel compelled to reexamine this issue that the court undertakes a de novo consideration of the question whether credit reports are conditionally privileged under Georgia law. The court is bolstered in this respect by the fact that most other jurisdictions have held commercial credit reports conditionally privileged under state law.[9]

---

8. Ga.Code Ann. § 105–710.

9. See The Law of Torts, Prosser, 4th Edition, 1971, p. 790. Altoona Clay Products, Inc. v. Dun & Bradstreet, Inc., 286 F.Supp. 899 (W.D.Pa.1968), vacated on other grounds 308 F.Supp. 1068; Retail Credit Co. v. Garraway, 240 Miss. 230, 126 So.2d 271 (1961); A.B.C. Needlecraft Co. v. Dun & Bradstreet, 245 F.2d 775 (2nd Cir. 1957); Petition of Retailers Commercial Agency, 342

It seems clear that if this credit report was a privileged communication, it must be so either because it was in performance of a private legal duty or because it was to protect Dun & Bradstreet's own interests.

Defendant argues that Dun & Bradstreet did have a valid interest in publishing the credit information on plaintiff because of the legally enforceable contract between Dun & Bradstreet and its subscribers to furnish requested information and Dun & Bradstreet's consequent interest in compliance with the terms of that contract. The closely related argument, that Dun & Bradstreet was acting in pursuance of a private legal duty, seeks to bring the communication under the provisions of Ga.Code Ann. § 105–709 (2). While the argument for a qualified privilege for credit reports can be made on the basis of either provision, and some other jurisdictions have held them privileged under both arguments,[10] the fact that there are legally enforceable contracts between Dun & Bradstreet and its subscribers would seem to make the provision granting the conditional privilege to "Statements [made] in the performance of a private duty; either legal or moral" squarely applicable.

In Cochran v. Sears, Roebuck & Co., 72 Ga.App. 458, 34 S.E.2d 296, the court held that the report by the company nurse to her superior about a supposed case of syphilis of one of the employees was privileged because it was made in the ordinary course of business and because the nurse was under a private contract with the company, under the terms of which she was required to report all cases of venereal disease. The rationale behind this conditional privilege is that one should not be rendered liable for making a communication which he is legally obligated to make, so long as the communication is not made with malice and is properly limited in scope and in its distribution. This rationale, and the strong public interest in the availability of credit information[11] convince this court that commercial credit reports come within the conditional privilege for statements made in the performance of a private legal duty. Ga.Code Ann. § 105–709(2). Accordingly, plaintiff can recover only if it appears that the conditional privilege was abused.

IV. WAS THE STATEMENT PUBLISHED WITH ACTUAL MALICE SUCH AS WOULD DEFEAT THE CONDITIONAL PRIVILEGE?

After the ruling that commercial credit reports are, in general, conditionally privileged under the law of Georgia, the question still remains whether the privilege was abused in the present fact situation. As was stated in Sheftall v. Central of Georgia Railway Co., 123 Ga. 589, 593, 51 S.E. 646, 648 (1905),

To make the defense of privilege complete in an action of libel, good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only, must appear. The absence of any one or more of these constituent elements will, as a general rule, prevent the party from relying upon the privilege.[12]

In issuing the credit report in question, Dun & Bradstreet was upholding its own interests in not breaching contracts with its subscribers and in not producing dissatisfied customers. The statement was limited in its scope to that purpose, in

Mass. 515, 174 N.E.2d 376 (1961); Barker v. Retail Credit Co., 8 Wis.2d 664, 100 N.W.2d 391 (1960); Dun & Bradstreet, Inc. v. Robinson, 233 Ark. 168, 345 S.W.2d 34 (1961); H. E. Crawford Co. v. Dun & Bradstreet, 241 F.2d 387 (4th Cir. 1957); Dun and Bradstreet, Inc. v. O'Neil, 456 S.W.2d 896 (Tex.1970).

10. See H. E. Crawford Co. v. Dun & Bradstreet, 241 F.2d 387 (4th Cir. 1957).

11. See Serino v. Dun & Bradstreet, Inc., 267 F.Supp. 396 (D.C.S.C.1967).

12. See also Veazy v. Blair, 86 Ga.App. 721, 72 S.E.2d 481 (1952); Cochran v. Sears, Roebuck & Co., 72 Ga.App. 458, 34 S.E.2d 296 (1945).

that the information contained therein was all of a sort which might be useful to one considering giving credit to or doing business with the subject of the report. The occasion was clearly proper; the eleven "Business Information Reports" were issued in response to requests from subscribers for the information. Likewise were the parties to whom it was issued proper, being subscribers to Dun & Bradstreet who were considering business ties with plaintiff.

Plaintiff has not asserted that the statement was overly broad or was made to improper parties; plaintiff's argument for recovery in spite of the conditional privilege rests on the assertion that the statement was published maliciously by Dun & Bradstreet. Under Georgia law, while the burden is on the defendant to establish that the statement was a conditionally privileged one, once that showing has been made, the burden is then on plaintiff to show that the publication was made with actual malice. WSAV–TV, Inc. v. Baxter, 119 Ga.App. 185, 166 S.E.2d 416; Van Gundy v. Wilson, 84 Ga.App. 429, 66 S.E.2d 93.

Plaintiff alleges that the evidence shows that defendant was malicious in its publication of the statement in the following respects: (1) failure to follow the normal practices and procedures on numerous occasions in regard to plaintiff; (2) failure to correct the erroneous information when it was first called to the attention of Dun & Bradstreet; (3) continued repetition of the erroneous information when Dun & Bradstreet had actual knowledge that the information was erroneous and did not apply to plaintiff.

Mr. Hurayt, a vice-president of defendant, testified in his deposition that it was the standard policy of defendant to show a credit report to the subject of the report so that he might examine it for error. The fact that the "Business Information Report" which is the subject of this lawsuit was not shown to plaintiff

before its publication is not in dispute. Mr. Hurayt also testified to the general company policy of correcting an erroneous report within twenty-four hours after the error has been pointed out to the company. On October 16, 1968, an employee of Whitlock Dobbs, a company which was stated in the "Business Information Report" in question to have filed suit against David Hood, telephoned an employee of Dun & Bradstreet to question the accuracy of the report that the suit was against David P. Hood, General Contractor. The affidavits of two employees of Dun & Bradstreet state that when the question of accuracy was raised on October 16, 1968, certain steps were taken to investigate the accuracy of the report.[13] Apparently, however, the investigation was not sufficiently thorough, for no correction notice was drafted until November 6, 1968, after plaintiff's attorney had contacted Dun & Bradstreet and informed them of the error. A correction notice was then sent to all subscribers who had received the incorrect report, and Dun & Bradstreet verified by telephone that those eleven subscribers had received the correction notice.

The source of the erroneous information regarding the two lawsuits was the Fulton County Courthouse records, which are regularly combed for information by Dun & Bradstreet employees. Both of the suits had been filed against a David Hood, also of Hapeville, Georgia. The report of the suit filed by Westron Corp. was originally published in a Dun & Bradstreet credit report on David P. Hood dated April 15, 1968. The suit filed by Whitlock Dobbs, Inc. was first reported on July 23, 1968, and the erroneous information about both suits was published again on August 23, 1968, and on October 11, 1968. Not once was the plaintiff questioned as to the accuracy of these reports.

While the above enumeration of the ways in which Dun & Bradstreet failed to follow its own procedures in

13. Haggerty affidavit, pp. 1–2; Royall affidavit, p. 2.

regard to plaintiff may well indicate negligence on the part of Dun & Bradstreet, the conduct of Dun & Bradstreet would not seem to justify any finding of more serious misconduct. While it may be standard company policy to allow the subject of a report to examine the report for accuracy, failure to follow that policy may not necessarily even be negligent. The fact that the information as to the two lawsuits was derived from the public records may explain why Dun & Bradstreet did not feel compelled to check with plaintiff as to the accuracy of the report; information gleaned from public records may in general be considered more reliable than data gathered from more informal sources. Moreover, as defendant points out, it was perfectly reasonable for the Dun & Bradstreet employee who saw the court record listing suits against a David Hood of Hapeville, Georgia, to assume that there was only one person by that name in that town. The fact that Dun & Bradstreet repeated the erroneous report on several occasions is of no consequence; the error was not repeated after complaint was made to Dun & Bradstreet by plaintiff.

As for the failure to correct on October 16, 1968, Dun & Bradstreet's investigation on that date apparently failed to uncover the error. And while defendant was alerted as to the possibility of error on October 16, 1968, the error was not complained of by plaintiff until November 6, 1968. A retraction was issued within twenty-four hours of plaintiff's notice of error, in compliance with the company's policy.

█ The most serious charge of malice is based on the fact that one of the suits erroneously reported as being against plaintiff had been turned over for collection to the Commercial Collection Division of Dun & Bradstreet. Plaintiff argues that defendant thus had actual knowledge that the suit was not against David P. Hood, General Contractor. However, the affidavits of those employees who worked closely with the preparation and then with the correction of the credit reports on plaintiff state that they did not know that the two suits had been filed against a person other than the plaintiff. Such statements are nowhere rebutted by the evidence set forth by plaintiff. Moreover, as the Supreme Court explained in New York Times v. Sullivan, 376 U.S. 254, 287, 84 S.Ct. 710, 730, 11 L.Ed.2d 686, the fact that one department or division of a large corporation, such as The New York Times, Inc. or Dun & Bradstreet, Inc., is in possession of certain information is not necessarily evidence that employees in another division, who were responsible for an erroneous statement, had knowledge of the truth and therefore awareness of the falsity of the published statements. No evidence has been submitted by plaintiff that the information that the suit was not against David Hood, Contractor, was brought home to those who prepared the "Business Information Report." The mere fact that someone in the Commercial Collection Division of Dun & Bradstreet knew that the suit by Whitlock Dobbs was filed against David Hood d/b/a Chicken King Restaurant and not against David P. Hood, General Contractor, does not establish that those who were responsible for the erroneous report had any knowledge of the error.

█ After consideration of all the allegations of actual malice set forth by plaintiff, it does not appear to the court that plaintiff has set forth sufficient evidence to reach the jury on that question. The Georgia standard for the actual malice which is required to defeat a conditional privilege is set forth in the Code as follows:

Ga.Code Ann. 105–710. Malicious use of privilege.—In every case of privileged communications, if the privilege is used merely as a cloak for venting private malice, and not bona fide in promotion of the object for which the privilege is granted, the party defamed shall have a right of action.

The word "malice" in Georgia defamation law may be used in two quite different ways. As the court explicated in

Ajouelo v. Auto-soler, 61 Ga.App. 216, 6 S.E.2d 415, 419:

> Malice in the law of defamation may be used in two senses: First, in a special and technical sense to denote absence of lawful excuse or to indicate absence of privileged occasion. Such malice is known as "Implied" malice or "malice in law." There is no imputation of ill will with intent to injure. Second, "malice" involving intent of mind and heart, or ill will against a person and is classified as express malice or "malice in fact."

■■ The use of "malice" in the general definition of libel [14] means only "implied malice," or lack of a lawful excuse. The type of malice which imposes liability in spite of the conditional privilege is malice in the ordinary, non-legal sense of the word. That it is the second type of malice, "express malice," which is required to defeat the conditional privilege, is made clear by the decision of Edmonds v. Atlanta Newspapers, 92 Ga. App. 15, 87 S.E.2d 415 (1955), a defamation case which was brought following a newspaper report that Parker Edmonds, Jr., had been charged with a crime when, in fact, it was his son, Parker Edmonds III, who had been so charged.[15] In holding that plaintiff had failed to produce sufficient evidence to avoid a dismissal, the court stated:

> While it is shown that the reporter, who was 44 years of age at the time, and the plaintiff, who was 43 years of age, had grown up together in Lawrenceville, and it is shown that the reporter knew the plaintiff's father and the plaintiff's son, and that they all bore the same name, differing only in that one was the senior, one the junior and the other the third, there is evidence that the reporter never thought of them in those terms, and there is no evidence whatsoever that the reporter bore any of them any

malice, as there is no showing of any hostility or animosity existing between them at any time. At 419.

The facts presented in Edmonds were much stronger on the issue of malice than those in the instant case. Here there is no evidence that any employee at Dun & Bradstreet knew plaintiff or had any reason to wish to injure him by publication of an erroneous credit report. In the absence of any evidence upon which a jury might reasonably base a finding of "express malice" on the part of the defendant, the court must find that, as a matter of law, the erroneous "Business Information Report" was not published with actual malice.

As the court has ruled that the publication in question was conditionally privileged under Georgia law, as plaintiff has no cause of action for defamation unless the conditional privilege was defeated by malice, and as the court has found that the false statements were not published with express malice, it is hereby ordered and adjudged that summary judgment for defendant be, and is hereby, entered.

It is so ordered.

---

14. See fn. 3, p. 175.

15. *See also* Veazy v. Blair, 86 Ga.App. 721, 72 S.E.2d 481 (1952); Atlanta

Journal Co. v. Doval, 82 Ga.App. 321, 60 S.E.2d 802 (1950).